**Decided February 12, 1979**

UNITED STATES DISTRICT COURT
DISTRICT OF THE NORTHERN MARIANA ISLANDS

GOVERNMENT OF THE NORTHERN MARIANA ISLANDS.

Plaintiff,

vs.

MOBIL OIL MICRONESIA, INC.,

Defendant.

Civil No. 78-003

MEMORANDUM OF
GROUNDS FOR DECISION

In this action defendant moved for summary judgment. The matter came on for hearing and the Court heard the arguments of counsel. The Court permitted the plaintiff to file a supplemental memorandum and upon such filing the motion was submitted for decision. The Court has heretofore caused to be filed its decision. This Memorandum states the grounds for such decision.

Plaintiff is the Government of the Northern Mariana Islands, a sovereign political subdivision of the United States of America, successor-in-interest to the Trust Territory of the Pacific Islands (Trust Territory). Defendant is Mobil Oil Micronesia, Inc. ("Mobil"), a corporation, incorporated under the laws of the Trust Territory on or about June 30, 1966. Plaintiff by its complaint alleges that defendant has been and is violating the antitrust laws of the United States. Upon the implementation of the Covenant between the United States of America and the Government of the Northern Mariana Islands on January 9, 1978, the antitrust laws of the United States became applicable to the Northern Mariana Islands. This Court has jurisdiction of this action pursuant to the antitrust laws of the United States.

2

The Trust Territory conducted economic studies and analyses from which it concluded that it was in the best interests of the Trust Territory and its inhabitants to invite proposals from private firms and corporations to furnish and supply the Trust Territory government with its requirements of petroleum products, including the ancillary equipment and storage facilities. These studies and analyses are reflected in Senate Joint Resolution No. 19, copy of which is attached to defendant's motion for summary judgment as Exhibit No. 3.

On or about February 25, 1966, Harold E. Arnold, Acting Director, Property and Supply for the Trust Territory, wrote letters to defendant and others forwarding copies of a request for proposals for instituting a territory-wide system of procuring, marketing and distributing petroleum products within the Trust Territory of the Pacific Islands from qualified sources. (See Exhibit A, letter attached to affidavit of Robert W. Barney filed in this action on April 17, 1978.) On or after February 23, 1966, the Trust Territory published an advertisement in the "Pacific Daily News" which advertisement stated as follows:

### Request for Proposals

Proposals for instituting a territory-wide system of procuring, marketing and distributing petroleum products within the Trust Territory of the Pacific Islands from qualified sources will be received in the office of the Acting Director, Property and Supply, Saipan, Mariana Islands, until 4:30 P.M., April 10, 1966.

Request for proposals, setting forth information regarding proposals may be obtained at the Office of the Trust Territory Liaison Officer, Butler Building, Agana, Guam, or at the office of the Acting Director, Property and Supply, Saipan, Mariana Islands.

        (Sgd) F. H. Moulton,
            Contracting Officer
            Trust Territory of the
            Pacific Islands

3

A copy of the Trust Territory's Request for Proposals dated March 1, 1966, is attached to the affidavit of Robert W. Barney, filed herein on April 17, 1978, as Exhibit "C".

As reflected in the letter of L. K. Anderson, Contracting Officer for the High Commissioner, Trust Territory, to Mobil Oil Philippines, Inc., dated May 11, 1966, proposals were received by the Trust Territory from the following six organizations:

        Shell Refining Company (Philippines), Inc.
        Yap Cooperative Association
        Nanyo Boeki Kaisha, Ltd.
        Caltex (Philippines), Inc.
        Mobil Oil Philippines, Inc.
        Esso Standard Eastern, Inc.

A copy of the Anderson letter is attached to the Barney affidavit as Exhibit "B".

As reflected in a letter dated May 23, 1966, from L. K. Anderson, Contracting Officer for the High Commissioner of the Trust Territory of the Pacific Islands, to Mr. E. P. Edmunds, on or about May 23, 1966, the Trust Territory determined that it would be in its best interests to hold further discussions with Esso Standard, Inc. ("Esso") and Mobil Investments S.A., with a view toward developing further information which could lead to the government's entering into definitive contract negotiations with Esso or Mobil Investments S.A.  A copy of said letter is attached as Exhibit "E" to the Barney affidavit.

On May 25, 1966, M. W. Goding, High Commissioner, advised Mr. E. P. Edmunds, Vice President, Mobil Investments, S.A., that the Trust Territory had determined, after consideration of all proposals that discussions should be commenced as soon as possible with representatives of Mobil Investments S.A., or its designee, with a view toward developing and finalizing details leading to the execution of

4

necessary agreements between the Trust Territory and Mobil. See Exhibit "F" to the Barney affidavit.

On or about June 30, 1966, a Supply Agreement ("Agreement") was executed between the Trust Territory and Mobil, which provided, in substance and effect, that the Trust Territory was to purchase and Mobil to sell all of the Trust Territory needs for petroleum products at predetermined formula prices according to the terms and conditions set forth in paragraph 6 of the Agreement. The execution of this Agreement represented the duly authorized and binding act of the Trust Territory and Mobil enforceable against each of them in accordance with its terms. A copy of the Agreement is attached to the complaint filed herein as Exhibit "ONE".

The initial term of the Agreement was for a ten (10) year period commencing on June 30, 1966, and ending on or about June 30, 1976. The Agreement also contained an optional five (5) year renewal period.

On June 7, 1973, the Honorable Peter T. Coleman, Deputy High Commissioner of the Trust Territory, advised Mobil that, in accordance with paragraph 11 of the Agreement, that the Department of the Interior had requested that all intereste parties be given an opportunity to submit proposals for the supply, storage and distribution of petroleum products in the Trust Territory for the period beginning on July 1, 1976. A copy of this letter dated June 7, 1973, is attached to the affidavit of Barney and marked Exhibit "G". This letter indicates that a public announcement of solicitation of proposals was published in the Pacific Daily News on or about June 15, 1973.

The solicitation for proposals referred to in paragraph 12 was published in the Pacific Daily News and other

5

newspapers in the Pacific area on or about June 15, 1973.

By letter dated July 17, 1973, Richard L. Miyamoto, Esquire, Attorney General for the Trust Territory, transmitted to Mobil and other interested parties a package with all the pertinent information regarding the Trust Territory Request for Proposals.

A copy of the objectives of the government in soliciting proposals from petroleum products companies is set forth as Exhibit "H" to the Barney affidavit.

On or about February 7, 1973, the Fifth Congress of Micronesia, First Regular Session, adopted "House Joint Resolution No. 2," a copy of which is attached to defendant's motion for summary judgment filed herein on April 17, 1978, as Exhibit "FOUR". This resolution provides in pertinent part as follows:

"WHEREAS, by a competitive bidding process the Trust Territory Government awarded to Mobil Oil Micronesia in 1966 the contract to provide the government's petroleum requirements and to purchase the existing petroleum dispensing facilities from the government; and

WHEREAS, since 1966 said Mobil Micronesia, Inc., has made every possible effort to provide efficiently the necessary petroleum products in every district of Micronesia to meet the rising demands for such products by the government as well as the private sectors of the Micronesian economy; and

WHEREAS, this Congress through its committees has on several occasions undertaken an in-depth study and review of the activities of Mobil Oil Micronesia, Inc., the latest one having been done by the House Committee on Resources and Development in December, 1972, and as a result of these reviews and its evaluations it has discovered past investment programs, present activities and projects in all districts of the Trust Territory as well as its future plans to be most acceptable and in keeping with the government's policy to promote and advance the well-being and betterment of the Micronesian people; and

WHEREAS, between 1966 and 1972, Mobil Oil Micronesia, Inc., has invested in the Trust Territory the sum of over $2 million, successfully and effectively

6

carried out the training of Micronesians to assume positions of responsibility and management of the company; imbarked upon a program of improving the facilities of gasoline retailers throughout Micronesia to serve the motoring public by way of business and technical advice, mode of equipment, monetary loans; insured the regularity and dependability and in the availability of petroleum products; imbarked on an ambitious program of providing scholarship support to students attending Micronesian schools; and allowed Micronesians to invest and own well over $100,000 in preferred stock in the company, the said stock paying a ten percent dividend as of December 31 of every year; and

WHEREAS, it is the sense of this Congress that it would be in the best interests of the Trust Territory government and of the Micronesian people if the present contract between the government and Mobil Oil Micronesia, Inc., were to be renewed and extended beyond its present expiration date; NOW THEREFORE

BE IT RESOLVED, by the House of Representatives of the Fifth Congress of Micronesia, First Regular Session, 1973, the Senate concurring, that by means of this House Joint Resolution this Congress convey its commendation to Mobil Oil Micronesia, Inc., for the exemplary manner in which this company has conducted and carried out its commercial business in Micronesia and apprise the High Commissioner of the sense of this Congress that he should renew and extend the present contract between the government and Mobil Oil Micronesia, Inc., by not giving the government notice of intent to terminate said contract prior to the expiration date thereof; . . . "

After receiving no proposals from other parties, by letter dated December 7, 1973, the Honorable Edward E. Johnston High Commissioner of the Trust Territory, notified Mobil that "the government has decided that its best interest will be served by allowing the renewal of the contract for an additional five-year period from June 30, 1976. This is your notice of that decision." A copy of said letter is attached to the Barney affidavit as Exhibit "I".

Since 1966, Mobil's entire investment in the Trust Territory in the fulfillment of its duties under the supply contract, including the purchase of facilities from the Trust Territory in 1966, has been in excess of $3,620,000. (Barney Affidavit, Item 4, P. 2.)

7

A controversy arose between Mobil and the District of the Northern Marianas of the Trust Territory in 1975 concerning whether residual fuel oil, otherwise known as Fuel Oil Number Six, required by the Trust Territory for the power barge, "Impedance", at Saipan Island, was subject to the June, 1966, Supply Agreement between Mobil and the Trust Territory.

This controversy was the subject of declaratory judgment proceedings which were resolved by a judgment in favor of Mobil in Mobil Oil Micronesia, Inc. v. The Trust Territory of the Pacific Islands, Civil Action No. 133-75, Trial Division of the High Court, Trust Territory of the Pacific Islands, on September 29, 1975. A copy of said judgment is attached to defendant's motion for summary judgment filed herein on April 17, 1978. That judgment holds, in pertinent part, as follows:

> "1. The agreement of June 30, 1966, between the plaintiff and the defendant, as renewed, is a valid requirements contract, providing for the procurement of petroleum products for use in the Trust Territory."

Pursuant to the act of March 24, 1976, Public Law 94-241, 90 Stat. 263, the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, was approved by Congress. Said Covenant is set forth at 48 U.S.C. § 1681.

On March 24, 1976, the Acting Secretary of the Interior issued Order No. 2989 which provided in Section 5 as follows:

> "All contracts, franchises, claims, demands, titles, rights, permits, licenses, and other forms of rights, privileges and obligations entered into or obtained prior to the Order shall remain in full force and effect until their natural or legal termination. The effect of Order No. 2989 is that all contracts,

8

etc., which were formerly applicable to the Northern Mariana Islands by virtue of its being a part of the Trust Territory of the Pacific Islands will remain in full force and effect with respect to the newly created government until their natural or legal termination."

The effect of the Secretarial Order is to make the contract between Mobil and the Trust Territory binding upon the Government of the Northern Marianas until the contract's "natural or legal termination".

The Order No. 2989 of the Acting Secretary of Interior, issued on March 24, 1976, further provides in Section XIV as follows:

> "This order shall be effective as of April 1, 1976. Its provisions shall remain in effect until the issuance of the proclamation by the President of the United States as described in Section 1003(b) of Article X of the Covenant, or until it is amended, superceded, or revoked, whichever occurs first."

On October 24, 1977, the President of the United States issued Proclamation No. 4534, 42 Fed. Reg. 56593 as described in Section 1003(b) of Article X of the Covenant. Section 1 of the proclamation indicates, in substance and effect, that the Constitution of the Northern Mariana Islands shall come into full force and effect at 11:00 o'clock on the morning of January 9, 1978. Section 2 of said proclamation indicates, inter alia, that Section 502 of the Covenant shall come into full force and effect on the same date, i.e., January 9, 1978. Section 502 of the Covenant provides as follows:

> "Section 502.(a)  The following laws of the United States in existence on the effective date of this section and subsequent amendments to such laws will apply to the Northern Mariana Islands, except as otherwise provided in this Covenant.

> \*    \*    \*    \*

> "(2)  Those laws not described in paragraph (1) which are applicable to Guam and which are of

9

general application to the several states as
they are applicable to the several states;
and  `. . .`"

The effect of Section 502 of the Covenant is to make
applicability in the Northern Mariana Islands on and after
January 9, 1978, the antitrust laws of the United States.

It appears from Order No. 2989, supra, that all
obligations and contracts of plaintiff's predecessor, Trust
Territory for the Pacific Islands, remain in full force and
effect after January 9, 1978, with the same force and effect
as that existed prior thereto.

It is the opinion of this Court that the 1966 Supply
Agreement between the Trust Territory of the Pacific Islands
and defendant, and the renewal of such Agreement, were the
result of valid governmental action and as such are exempt from
scrutiny under the Federal antitrust laws under principles
enunciated in Parker v. Brown. 317 U.S. 341 (1943). The Trust
Territory of the Pacific Islands initiated the negotiations
which led to the execution of such 1966 Agreement and the
renewal of that Agreement was initiated as it heretofore
appears by the Trust Territory of the Pacific Islands. Title
2, Trust Territory Code, Section 1, in pertinent part gives
to the High Commissioner, acting for the Government of the
Trust Territory, primary responsibility, inter alia, for
establishment and control of the terms and conditions under
which importing . . .. . licenses shall be issued while
Section 51 of the same Title gives to the High Commissioner,
subject to the supervision and direction of the Secretary of
the Interior, all executive and administrative powers of
government in the Trust Territory.

It should be noted factually that the contract made
by defendant with the Trust Territory government is not an

10

exclusive franchise but only a Government supply agreement.

It has already been established that the contract in question is valid as a matter of law. The decision was reached in Civil Action No. 133-75 before the High Court of the Trust Territory. That Court found as a fact that the Agreement of 1966, with which we are here concerned, is a vali requirements contract providing for the procurement by the Trust Territory of petroleum products for use within the Trust Territory and the Court so ruled. It would appear that plaintiff in the instant action is estopped to contend that the contract in question is not a valid requirements contract. A successor in interest is so estopped to attack the judgment against its predecessor in interest where the subject matter of the prior action between, as here, the defendant and the Trust Territory is the same as the subject matter of the instant action between plaintiff and defendant.

It is clear from the record that the 1966 Supply Agreement was executed because of the initiation by the Trust Territory of the concept of having one supplier for all petroleum products to be purchased by the Trust Territory Government throughout the Trust Territory. It sought bids from various oil companies for the supplying of all of the petroleum products to the Trust Territory Government. Then again when the Agreement was extended, it was the Trust Territory Government that notified defendant that the Trust Territory desired to have the renewal of the contract go forward.

It would thus seem that the doctrine of pari delicto, as enunciated by Mr. Justice Marshall in his concurring opiniq in Perma Life Mufflers, Inc. vs. International Parts, Inc., 392 U.S. 134 (1968), at pages 148-149, is applicable to this

11

case and that plaintiff should be barred recovery on such basis also. The Trust Territory Government is shown upon the record to be the most active participant in the formation and implementation of the contract here in question and is substantially equally at fault (if there be any fault on the part of any body) with the defendant. This Court does not consider that in this case there is any legal fault under the antitrust laws but considers that the pari delicto defense is available to the defendant for the reason that the plaintif in the instant case is the successor in interest of the Trust Territory Government and is subject to the same infirmities in the area of pari delicto as its predecessor in interest.

This Court does not consider that Javelin v. Uniroyal, Inc., (C.A. 9th 1977) 546 F.2d 276, mandates a contrary result

The plaintiff in this case has moved for a partial summary judgment. Such partial summary judgment is denied for the reasons set forth for the granting of defendant's motion for summary judgment.

The foregoing constitutes a summary of the material undisputed facts and the Conclusions of Law of the Court. Where there is no material disputed fact, as here, this is a proper case for summary judgment. The Court will cause to be filed and entered its formal written judgment but no judgment shall be entered until such formal judgment of the Court is entered.

DATED: February 1, 1979.

FRANCIS C. WHELAN
United States District Judge