WESLEY, Circuit Judge,
concurring:
I concur in the excellent reasoning of Judge Carney and her conclusion that Gatt lacks standing to bring federal or state antitrust claims and that its tort claims are without merit. I write separately because, although the anti-trust standing issue can serve as a basis for dismissal, I believe this is a paradigmatic case for dismissal under the doctrine of in pari delicto.[1]
The facts in this case are extraordinary and exceptionally troubling. As noted by the Majority, Gatt admits that it knowingly participated in the bid-rigging scheme by either entering dummy bids or not submitting bids at PMC’s direction. Gatt also readily admits that “[o]n over 100 occasions,” it benefited from the scheme by receiving contracts from various New York City public schools. Gattini Aff. ¶ 28. Indeed, Pietro Gattini, Gatt’s owner and president,[2] recounts in detail Gatt’s understanding of, and willing participation in, the bid-rigging scheme:
27. From about 2003 to 2007, when Gatt would be told that two other bids would be needed besides Gatt’s bid to get a school to buy, [I] would telephone PMC and speak to either Vesel Ramovie or Phillip Casciano about the request and was told: “Just fax us a copy of Gatt’s bid, and we will take care of arranging the other bids so Gatt will get the sale.” Vesel Ramovie and/or Phillip Casciano had previously explained to me that whatever Gatt was bidding, the bids obtained by PMC would be higher but would be sent in as if they were independent because PMC had arranged with other Vertex dealers to supply *83 these bids just as Gatt was expected to put in a bid dictated by PMC when requested to do so.
28. Thereafter, in more than one hundred instances, Gatt regularly obtained requests to put in a bid from individual schools for Vertex radios, mailed, faxed or emailed in bids in response, sent faxed, emailed or mailed copies of each bid to PMC, at PMC’s direction other Vertex dealers and/or PMC would prepare and either mail, fax or email in their “independent” bids, and Gatt would thereafter receive mailed or faxed purchase orders from the New York City Department of Education for the Vertex radios being offered by Gatt. It is [my] understanding that the “dummy bids” arranged or produced by PMC in aid of all of these school sales were framed high so that Gatt’s bid would be the lowest.... That is to say, the bids were orchestrated and fixed by PMC in a manner calculated to deceive each school requesting the bids. The effect of this practice was to deprive each school of the advantage or benefit or price discount which might have been obtained if there had been bona fide competitive bidding.
Gattini Aff.
Given Gatt’s unabashed participation in the bid-rigging scheme, its claims should be barred under the doctrine of in pari delicto. This common law defense provides that “a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing.” Black’s Law Dictionary 794 (9th ed. 2009). It “derives from the Latin, in pari delicto potior est conditio defendentis: ‘In a case of equal or mutual fault ... the position of the [defending] party ... is the better one.’ ” Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299, 306, 105 S.Ct. 2622, 86 L.Ed.2d 215 (1985) (citations omitted). The doctrine is based on the policy that “courts should not lend their good offices to mediating disputes among wrongdoers” and “denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality.” Id. Courts employ the doctrine in a wide variety of contexts. See, e.g., Pinter v. Dahl, 486 U.S. 622, 633-34, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988); see also BrandAid Mktg. Corp. v. Biss, 462 F.3d 216, 218-19 (2d Cir.2006) (applying the in pari delicto analysis to a claim for tortious interference with contract but finding that plaintiffs’ wrongdoing was insufficient for the defense to merit dismissal).
The Supreme Court has considered the application of the in pari delicto doctrine in the enforcement of antitrust and securities laws. Bateman Eichler, 472 U.S. at 299, 105 S.Ct. 2622; Perma Life Mufflers, Inc. v. Int’l Parts Corp., 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968), overruled on other grounds by Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984). Although in both instances the Court declined to apply the doctrine, the Court explained that the doctrine would be appropriate where the plaintiff was substantially involved in the unlawful activity and preclusion of suit would not interfere with the policy goals of the federal statute.
In Perma Life, the Court declined to employ in pari delicto where “a private suit serves important public purposes.” Perma Life Mufflers, Inc., 392 U.S. at 138, 88 S.Ct. 1981. The Court did indicate that “the doctrine of in pari delicto ... is not to be recognized as a defense to an antitrust action.” Id. at 140, 88 S.Ct. 1981. But the basis for that decision was that the opponents entangled in the illegal scheme were of decidedly unequal strength. The plaintiffs, the Court noted, “participated to the extent of utilizing illegal arrangements *84 formulated and carried out by others ... [but] their participation was not voluntary in any meaningful sense.” Id. at 139, 88 S.Ct. 1981.
Recognizing that the scheme had been thrust upon plaintiffs, the Court reserved the question of whether a plaintiff who engaged in “truly complete involvement and participation in a monopolistic scheme” — one who “aggressively supported] and further[ed] the monopolistic scheme as a necessary part and parcel of it” — could be barred from pursuing a damages action. Id. at 140, 88 S.Ct. 1981. In concurrences, five members of the Perma Life Court favored barring suit by antitrust plaintiffs who were substantially involved in the conspiracy.[3]
The Court’s subsequent decision in Bateman Eichler reinforced this view. In Bateman Eichler; the Court addressed whether in pari delicto is an available defense to a private action for damages brought under the federal securities laws. Bateman Eichler, 472 U.S. at 301, 105 S.Ct. 2622. After noting that the “views expressed in Perma Life apply with full force to implied causes of action under the federal securities laws,”- the Court held that a private action for damages under federal securities laws may be barred under the doctrine of in pari delicto where “(1) as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress, and (2) preclusion of suit would not significantly interfere with the effective enforcement of the securities laws and protection of the investing public.” Id. at 310-11,105 S.Ct. 2622.[4]
In light of the Court’s reasoning, every one of our sister circuits to consider the issue has held that antitrust plaintiffs who actively participate in the illegal scheme and who are substantially ■ at fault are barred from suit. See, e.g., Sullivan v. Nat’l Football League, 34 F.3d 1091, 1107 (1st Cir.1994); Gen. Leaseways, Inc. v. Nat’l Truck Leasing Ass’n, 830 F.2d 716, 720-23 (7th Cir.1987); Javelin Corp. v. Uniroyal, Inc., 546 F.2d 276, 279 (9th Cir.1976); Columbia Nitrogen Corp. v. Royster Co., 451 F.2d 3, 16 (4th Cir.1971). Although we have yet to address the issue, we have recognized that “[t]he [in pari delicto] defense may be available ... when the plaintiff was present at the creation and had a complete and continuing involvement in the monopolization scheme.” U.S. Football League v. Nat’l Football League, 842 F.2d 1335, 1369 (2d Cir.1988).
This case is certainly a good candidate for the view that a cause of action under the Sherman Act is barred where (1) the plaintiff is an active and willing participant in the illegal activity, and (2) dismissing the suit does not significantly interfere *85 with the policy goals underlying the act.[5]
The record is plain that Gatt was an active and willing participant in the bid-rigging scheme. Gatt readily, and repeatedly, admits to its participation in, and benefit from, the coordinated effort to defraud various New York State and City governmental agencies. Gatt admits that there were numerous instances in which it sought the assistance of PMC to coordinate sham bids to enrich Gatt from government contracts. Indeed, Gatt’s president and owner discusses at length how Gatt engaged in bid-rigging “in more than one hundred instances” and reaped the benefits therefrom. Gattini Aff. ¶ 28.
The Majority is reluctant to apply the doctrine of in pari delicto because, in its view, the factual record is not developed and warns that other circuits have considered the application of in pari delicto following a trial or summary judgment. While that word of caution does make general sense it ignores the rather unusual circumstance of this case. Gatt’s complaint, its appellate brief, and the Gattini affidavit make clear that Gatt coordinated with PMC to make sham bids to rig the bidding process to its benefit. From Gatt’s own hand there can be no doubt that there was no coercion here. Gatt participated in the scheme for several years and was motivated by its own self interest. Gattini Aff. ¶¶ 27-28. And its participation in the scheme paid off. According to Gatt, its business grew rapidly from 2002 to 2007, and it became “one of the most productive Vertex dealers in the United States.” Am. Compl. ¶ 35.
Furthermore, application of the in pari delicto doctrine will not interfere with the policy goals underlying the Sherman Act, as suggested by the Majority. Indeed, Gatt’s recovery under the Sherman Act could not further the act’s essential purpose: “safeguarding consumer welfare.” Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll., 128 F.3d 59, 63 (2d Cir.1997). Instead, it would have the perverse effect of redistributing ill-gotten gains among similarly situated conspirators. To entertain a dispute under these circumstances would be a waste of valuable judicial resources and offend the public interest.
For the foregoing reasons, I would dismiss on the basis of in pari delicto.

. We are not compelled to determine whether Gatt has antitrust standing before addressing the doctrine of in pari delicto. Antitrust standing involves an analysis of prudential considerations aimed at "avoid[ing] counterproductive use of antitrust laws in ways that could harm competition rather than protecting it.” Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir.2007). In this vein, it is distinct from Article III standing, which must be assessed before reaching the in pari delicto defense. Cf. In re Senior Cottages of Am., LLC, 482 F.3d 997, 1002-03 (8th Cir.2007); see also Kirschner v. KPMG LLP, 15 N.Y.3d 446, 459 n. 3, 912 N.Y.S.2d 508, 938 N.E.2d 941 (2010).

. I agree with the Majority that we may consider the Gattini Affidavit. Generally, the harm to the plaintiff when a court considers material extraneous to a complaint without converting the claim into one for summary judgment is the lack of notice that the material may be considered. But "[wjhere plaintiff has actual notice of all the information ... and has relied upon [the] documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.” Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir.1991). Gatt relied on the Gattini affidavit in its briefs to the district court and on appeal, as well as during oral argument. The information and documents contained therein are known by Gatt and were employed by it in framing the complaint. There is no reason we should not consider it on appeal.

. See Perma Life Mufflers, Inc., 392 U.S. at 146, 88 S.Ct. 1981 (White, J., concurring) ("I would deny recovery where plaintiff and defendant bear substantially equal responsibility for injury resulting to one of [the co-conspirators] ....”); id. at 147, 88 S.Ct. 1981 (Fortas, /., concurring) (Suit should be barred when "the fault of the parties is reasonably within the same scale.”); id. at 149, 88 S.Ct. 1981 (Marshall, /., concurring) ("I would hold that where a defendant in a private antitrust suit can show that the plaintiff actively participated in the formation and implementation of an illegal scheme, and is substantially equally at fault, the plaintiff should be barred from imposing liability on the defendant.”); id. at 153, 88 S.Ct. 1981 (Harlan, /., concurring in part and dissenting in part) (Stewart, /., joining) ("[PJroperly used[, in pari delicto] refers to a defense that should be permitted in antitrust cases.”).

. I fail to see how this is “broad-brush application of the in pari delicto defense” as the Majority seems to imply. Majority Opinion at 6148.

. As the Majority notes there are other potential plaintiffs (the state agencies that purchased equipment as a result of the bid rigging scheme) whose own interests would surely motivate them to vindicate the public interest in antitrust enforcement. Majority at 6145.