Alfred T. WATKINSON

v.

The GREAT ATLANTIC & PACIFIC TEA CO., INC.

Civ. A. No. 82–3312.

United States District Court, E.D. Pennsylvania.

March 30, 1984.

E. Leigh Hunt, Philadelphia, Pa., for plaintiff.

Robert W. Hartland, Pittsburgh, Pa., Christopher K. Walters, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

KELLY, District Judge.

This action was filed by plaintiff Alfred T. Watkinson against defendant The Great Atlantic & Pacific Tea Company, Inc. ("A & P") on June 30, 1982. In his Complaint, plaintiff alleged that he was terminated from his position with A & P in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, *et seq.* (1976) (Count I), state contract law (Count II), and the federal Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* (1976) (Count III).

## FACTS

Plaintiff was terminated from his employment with A&P on February 20, 1982, at which time plaintiff was 51 years old. Immediately prior to his termination, plaintiff was employed by A & P as the Controller of the Pennsylvania Group, a position he had held since August of 1980, when the Pennsylvania Group came into being.

As a result of severe financial circumstances experienced by the Company during the 1970's, A & P was forced to embark on a substantial national store-closing program in 1975, which has continued to date. As part of the continuing storeclosing program the decision was made to close approximately 400 additional unprofitable A & P stores nationwide. In connection with these closings, 39 stores within the Philadelphia Division of the Pennsylvania Group were closed in December of 1981. As a result of these retail store closings, many positions within the Pennsylvania Group's administrative staff, including the position of Group Controller, were eliminated. On February 5, 1982, plaintiff was informed that his job as Group Controller had been eliminated and that he would be terminated effective February 20, 1982.

The elimination of positions within the administrative staff of the Pennsylvania Group continued until February 25, 1982, when the decision was announced by A&P corporate officials that the entire Pennsylvania Group would be closed along with the Philadelphia Division, as would approximately 70 additional A&P stores administered by the Group. By late April of 1982, the administrative offices of the Pennsylvania Group were fully disbanded, all job functions within the Group were eliminated, and all but a handful of the employees were terminated.

Subsequent to the institution of this action, two additional complaints were filed captioned *Alfred T. Watkinson v. Super Fresh Food Markets, Inc.,* No. 84–0892 ("*Watkinson v. Super Fresh*") and *Edward J. Shields v. The Great Atlantic and Pacific Tea Company,* No. 84–0893 ("*Shields v. A & P*"). These Complaints were filed on February 23, 1984. Presently before the Court is defendant's motion for summary judgment and plaintiff's motion to consolidate this action with *Watkinson v. Super Fresh* and *Shields v. Super Fresh.*

## DISCUSSION

The appropriate standard for determining a Rule 56 motion for summary judgment was summarized in *Forms, Inc. v. American Standard, Inc.,* 546 F.Supp. 314 (E.D.Pa.1982),

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." Fed.R.Civ.P. 56(e). The initial burden of support under the Federal Rules is upon the movant, who must show that the facts which would warrant summary judgment in his favor are indisputable with the opposing party given the benefit of any favorable inferences. *See* 6 Moore's Federal Practice ¶ 56.15[1] at 56–344. But the burden shifts to the opposing party when the movant presents evidence which would require a directed verdict in his favor at trial. *Cousins v. Yeager,* 394 F.Supp. 595 (E.D. Pa.1975); 6 Moore's Federal Practice,

¶ 56.11[3]. "The party resisting a motion for summary judgment may not rest upon the mere allegations of his pleading; his response must set forth specific facts showing that a genuine issue for trial exists." *Wire Mesh Products, Inc. v. Wire Belting Association*, 520 F.Supp. 1004, 1005 (E.D.Pa.1981).

*Id.* at 320–21.

## A. ADEA Claim

In support of its motion for summary judgment with respect to Count I, defendants assert that "on the basis of plaintiff's deposition testimony, as well as in light of the affidavits attached to A & P's motion for summary judgment, it is clear that there are presently no disputed material facts relevant to a disposition." Defendant's Memorandum in Support of Motion for Summary Judgment ("Defendant's Memo") at 29.

In this case, I find that defendant has met its initial burden. Plaintiff has, however, come forward with factual matter sufficient to avoid summary judgment. Plaintiff has attached a document marked "C" to his affidavit filed November 14, 1983, and upon which he relies in opposing the present motion. The document is a letter to A & P's stockholders from James Wood, Chairman of the Board, President and Chief Executive Officer, dated May 4, 1982. Mr. Wood, enumerating a number of causes for A & P's negative performance, states the following: "[s]econd, store closings have resulted in a senior work force with much higher cost per man hour than competition." While this is admittedly a rather tenuous basis upon which to find that plaintiff has met his burden of coming forward with some evidence, I conclude that he has. It might be inferred from this statement that the company, recognizing that a senior work force caused higher operating costs, attempted to "remedy" the situation by terminating older workers. Accordingly, defendant's motion for summary judgment will be denied.

## B. Contract Claims

In Count II of his Complaint plaintiff alleges that he had an employment contract with A & P. Plaintiff therefore seeks to add a common law breach of contract action to the statutory remedy provided under the ADEA. Under Pennsylvania law, the statutory remedy for age discrimination, the Pennsylvania Human Relations Act, 43 Pa.S.A. §§ 951 et seq. (Purdon 1964 & Supp. 1982), is the exclusive remedy. *See Bruffett v. Warner Communications, Inc.*, 692 F.2d 910, 918–19 (3d Cir. 1982); *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187, 193 (3d Cir.1978); *Kamens v. Summit Stainless, Inc., et al.*, 586 F.Supp. 324 (E.D.Pa.1984). Therefore, plaintiff's claims sounding in contract will be dismissed.

## C. ERISA Claims

In Count III of his Complaint, plaintiff asserts his entitlement to recovery against A & P pursuant to the federal Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* Plaintiff alleges that he was terminated by A & P for the purpose of preventing plaintiff from attaining additional benefits under The Great Atlantic & Pacific Tea Company, Inc. Employees' Retirement Plan (the "Pension Plan" or "Plan"), in which he was a participant and beneficiary. Moreover, plaintiff alleges that A & P's motive in terminating him was to enhance the actuarial overfunding of the Pension Plan in an improper attempt to reclaim the actuarial overfunding of the Plan. Plaintiff also alleges that A & P caused the Pension Plan to be improperly amended as part of a "scheme" to misappropriate accrued Plan assets belonging to Plan participants, including plaintiff.

Defendant argues that the plaintiff's ERISA claims were adjudicated in a class action captioned *William I. Walsh v. The Great Atlantic & Pacific Tea Co., Inc.*, 96 F.R.D. 632 (D.N.J.1983); and are, therefore, *res judicata.* Plaintiff maintains that the only issue presented in *Walsh* was the

ownership of the pension fund excess on termination of the Plan. Plaintiff argues that the ERISA claims presented herein are distinct from the issue in *Walsh*. Specifically, plaintiff states that his discharge was to prevent him from attaining enhanced pension rights arising from continued employment.

■ I conclude that plaintiff has raised a claim which was not present in *Walsh*. However, as defendants correctly note, in order to prevail under the theory plaintiff advances, he must show defendant's "specific intent" to violate ERISA. *Titsch v. Reliance Group, Inc.*, 548 F.Supp. 983, 985 (S.D.N.Y.1982) ("No ERISA cause of action lies where the loss of pension benefits was a mere consequence of, but not a motivating factor behind, a termination of employment".) While this may present a difficult problem of proof at trial, it serves to avoid summary judgment. As a general rule, summary judgment is inappropriate in actions involving state of mind. *DePriest v. Seaway Food Town, Inc.*, 543 F.Supp. 1355, 1358 (D.C.Mich. 1982) ("In employment discrimination cases where the defendant's state of mind, intent and motive are central issues, summary judgment should be granted only in the clearest of cases.").

D. Plaintiff's Motion to Consolidate

■ Rule 42(a) of the Federal Rules of Civil Procedure governs consolidations of actions in federal court. The power given the Court in Rule 42(a) to consolidate actions involving "a common question of law or fact" is purely discretionary. *5 Moore's Federal Practice* ¶ 42.02, page 42–4. The moving party has the burden of persuading the court that consolidation is proper. *Prudential Ins. Co. of America v. Marine National Exchange Bank*, 55 F.R.D. 436 (E.D.Wis.1972); *Transeastern Shipping Co. v. India Supply Mission*, 53 F.R.D. 204 (S.D.N.Y.1971); *Schacht v. Javits*, 53 F.R.D. 321 (S.D.N.Y.1971). Moreover, as noted by Professor Moore: "[w]here one case is ready for trial and the other case requires discovery and trial preparation, the cases should not be consolidated as a matter of sound juridical administration." *5 Moore's Federal Practice* ¶ 42.02[3] at page 42–20.

 This case is presently in the trial pool for the week of April 9, 1984. Plaintiff offers no explanation for why he has waited one and one-half years to bring Super Fresh into the present action. The *Shields* case presents even less reason for granting plaintiff's motion.

Accordingly, plaintiff's motion to consolidate will be denied.