**Harry C. MURRAY, Jr., Plaintiff,**

v.

**KAISER ALUMINUM & CHEMICAL CORPORATION, Defendant.**

Civ. A. No. 83–A045.

United States District Court,
S.D. West Virginia,
Parkersburg Division.

Aug. 23, 1984.

---

Guy R. Bucci and J. Michael Ranson, Charleston, W. Va., for plaintiff.

E. Glenn Robinson and Michael B. Victorson, Robinson & McElwee, Charleston, W. Va., for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

### I. *Background*

■ The Plaintiff, Harry C. Murray, Jr., brings this action under the Court's diversity jurisdiction seeking compensatory and punitive damages against his former employer, Kaiser Aluminum & Chemical Corporation (hereinafter referred to as Kaiser), for Kaiser's alleged breach of an employment contract between Plaintiff and Kaiser. The action is now pending before the Court on Kaiser's motion for summary judgment pursuant to *Rule* 56 of the Federal Rules of Civil Procedure.

Plaintiff was hired by Kaiser on September 16, 1977, as a maintenance foreman and as such was a salaried employee not covered by the collective bargaining agreement between Kaiser and the United Steelworkers of America.[1] On September 19, 1977, Plaintiff signed a document styled "AGREEMENT", the first numbered paragraph of which provided as follows:

---

1. Because Plaintiff was not a member of the collective bargaining unit, his civil action challenging the employer's decision to terminate his employment is not barred by the preemption doctrine established by the Supreme Court in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) and its progeny.

"Employer employs and shall continue to employ Employee at such compensation and for such a length of time as shall be mutually agreeable to Employer and Employee."

It is this agreement, and more particularly the above quoted paragraph, which Plaintiff argues constituted, along with Kaiser's published "Rules of Conduct",[2] an employment contract between Plaintiff and Kaiser. The Plaintiff was terminated[3] on October 21, 1980, as the result of a sharp dispute[4] with his immediate supervisor concerning the assignment of an hourly employee to overtime work. Plaintiff claims that this termination was a breach of his employment contract with Kaiser. Kaiser, on the other hand, asserts that Plaintiff was an "at will" employee whose employment could be terminated at any time, with or without cause, by either Kaiser or the Plaintiff himself.

## II. *Discussion*

■ It has been long settled in West Virginia[5] that when an employment is for an indefinite duration it is an "at will" employment and may be terminated, with or without cause, by either the employee or employer at any time. *See e.g., Shanholtz v. Monongahela Power Co.,* 270 S.E.2d 178, 181 (W.Va.1980); *Harless v. First National Bank in Fairmont,* 246 S.E.2d 270, 273 (W.Va.1978); *Wright v. Standard Ultramarine & Color Co.,* 141 W.Va. 368, 382–83, 90 S.E.2d 459, 468 (1955); *Bell v.*

**2.** *See infra* at pp. 1553–1554.

**3.** More accurately, Plaintiff was offered the opportunity to resign from Kaiser rather than be discharged. Plaintiff accepted this offer and resigned on October 28, 1980, effective November 28, 1980. The Court finds this distinction to be purely a matter of semantics for the purposes of this discussion—Kaiser does not contend that the Plaintiff's severance from Kaiser was anything other than an involuntary dismissal.

**4.** Because this matter is before the Court on Kaiser's motion for summary judgment, the Court will not endeavor to resolve the minor factual disputes concerning the circumstances surrounding the argument which ultimately resulted in Plaintiff's dismissal, *e.g.,* whether Plaintiff kicked in the door leading to his supervisor's office.

*South Penn Natural Gas Co.,* 135 W.Va. 25, 32, 62 S.E.2d 285, 288 (1950).[6] Therefore, if Plaintiff was an "at will" employee of Kaiser, the foregoing authorities control this matter and dictate that, as a matter of law, Kaiser had a right to discharge Plaintiff at any time, with or without cause, without exposing itself to liability for breach of contract. Plaintiff, however, argues that the September 19, 1977, agreement specifies the duration of Plaintiff's employment and that that written agreement removes him from the category of an "at will" employee:

"[A]ccepting the terms of the defendant's own contract, the plaintiff was promised employment by the defendant for such a length of time as that which is agreeable between the plaintiff and the defendant and the plaintiff accepted that promise.

In the present case, the defendant is attempting to avoid the mutuality clause in the contract of employment. Since the plaintiff does not 'mutually' agree to end his employment, the employment cannot end."[7]

Plaintiff also argues that this matter is not appropriate for resolution upon a motion for summary judgment because "the controlling question is not one of law but who is to be believed concerning the meaning of the contract of employment."[8]

**5.** Inasmuch as this is an action brought under the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, West Virginia substantive law controls under the familiar doctrine enunciated in *Erie Railway Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**6.** The sole exception to this rule, not applicable to this case, is where the termination is motivated by an intention to contravene some substantial public policy. *See Harless v. First National Bank in Fairmont,* 246 S.E.2d at 273; *Shanholtz v. Monongahela Power Co.,* 270 S.E.2d at 181–82.

**7.** *See* Plaintiff's memorandum of law in opposition to Defendant's motion for summary judgment at p. 6.

**8.** *See* Plaintiff's memorandum of law in opposition to Defendant's motion for summary judgment at pp. 1–2.

■ As to Plaintiff's argument concerning the disposition of this case on Defendant's motion for summary judgment, the Court notes that it is the function of the Court, not the jury, to resolve questions respecting the construction and interpretation of a contract. *See Lee Enterprises v. Twentieth Century Fox,* 303 S.E.2d 702 (W.Va.1983); *Berkeley County Public Service District v. Vitro Corp. of America,* 152 W.Va. 252, 162 S.E.2d 189 (1968); *Franklin v. Pence,* 128 W.Va. 353, 36 S.E.2d 505 (1945); *Colerider v. Central National Bank of Buckhannon,* 125 W.Va. 760, 25 S.E.2d 903 (1943); *Stephens v. Bartlett,* 118 W.Va. 421, 191 S.E. 550 (1937); *Stewart v. Blackwood Electric Steel Corp.,* 100 W.Va. 331, 130 S.E. 447 (1925); *Watson v. Buckhannon River Coal Co.,* 95 W.Va. 164, 120 S.E. 390 (1923); *Franklin v. T.H. Lilly Lumber Co.,* 66 W.Va. 164, 66 S.E. 225 (1909). Because the dispositive issue presented by Defendant's motion is purely a matter of construction, the Court concludes that the motion *sub judice* is properly resolved on Defendant's motion for summary judgment.

■ When presented with a question which arguably requires the Court to interpret a contract, the threshold question which the Court initially must answer is whether the contract is ambiguous. If the provisions of the contract are clear and unambiguous they are to be applied by the Court without resort to the rules of construction. *Columbia Gas Transmissions Corp. v. E.I. duPont de Nemours & Co., Inc.,* 159 W.Va. 1, 217 S.E.2d 919 (1975); *Cotiga Development Co. v. United Fuel Gas Company,* 147 W.Va. 484, 128 S.E.2d 626 (1962); *Davis v. Combined Insurance Co. of America,* 137 W.Va. 196, 70 S.E.2d 814 (1952); *White v. Bailey,* 65 W.Va. 573, 64 S.E. 1019 (1909). After reviewing the September 19, 1977, agreement it is obvious to the Court that the document is un-

ambiguous. The language clearly states that Plaintiff's employment is to continue "for such a length of time as shall be *mutually* agreeable to the parties." (Emphasis added). Plaintiff's suggested construction, that the employment could not be unilaterally ended by either party because such action would not be "mutual" is tortured and untenable.[9]

■ The Court must give the words used by the parties their general and ordinary meanings. *McDonough v. E.I. duPont de Nemours & Co. Inc.,* 280 S.E.2d 246 (W.Va.1981); *Nisbet v. Watson,* 251 S.E.2d 774 (W.Va.1979); *Mills v. Edgell,* 69 W.Va. 421, 71 S.E. 574 (1911); *Williams v. South Penn Oil Co.,* 52 W.Va. 181, 43 S.E. 214 (1902) *overruled on other grounds Ramage v. South Penn Oil Co.,* 94 W.Va. 81, 118 S.E. 162 (1923). Giving the words "mutually agreeable" their general and ordinary meaning, the construction commanded by the language is inescapable—if *either* party no longer desires the employment to continue, the employment would no longer be "mutually agreeable" and could be terminated by the party desiring to do so. In short, either Plaintiff or Kaiser had the right to unilaterally end the employment relationship. Accordingly, Kaiser cannot be held liable to Plaintiff in this action because it chose to exercise its legal right to terminate Plaintiff.

Nor do the "Rules of Conduct" assist Plaintiff in his attempt to avoid the legal ramifications of being an "at will" employee. Plaintiff argues that the conduct which resulted in his dismissal fell within the category of the Group II offense of being "willfully insubordinate or directly disobedient to a supervisor's directions." The penalty prescribed in the "Rules of Conduct" for a first offense of a Group II rule is a three-day suspension.

■ Even assuming that these rules were applicable to Plaintiff,[10] they do not

---

9. *Reductio ad absurdum,* under Plaintiff's proposed construction of the document, Plaintiff could *never* be discharged, *for any reason* without his consent (which, presumably, would not be forthcoming). Likewise, under Plaintiff's interpretation, the Plaintiff could not quit his job

unless Kaiser consented. The Court rejects this proffered instruction as being clearly contrary to the language of the document.

10. Kaiser contends they apply only to hourly employees.

change Plaintiff's status as an "at will" employee inasmuch as the introductory paragraphs explaining the operation of the rules clearly do not limit or bind Kaiser to the prescribed penalties:

"[These rules] do not represent every conceivable type of offense, but reflect those most frequently encountered.

Misconduct not specifically described in these guidelines will be handled as warranted by the circumstances of the case involved. Penalties imposed as a result of infractions of the Rules may be modified by the company when extenuating circumstances are found. Likewise, flagrant infractions of the Rules of Conduct may result in action of greater severity than shown below."

The "Rules of Conduct", therefore, do not operate to change the parties' employment relationship from one being "at will" to one controlled by contract.

For the reasons discussed above, the Court concludes as a matter of law that Plaintiff was an "at will" employee of Kaiser and, therefore, could be discharged at any time, with or without cause. Accordingly, the Court hereby grants Defendant's motion for summary judgment. In so ruling, the Court notes that its ruling herein is in no manner an approval of Kaiser's action dismissing Plaintiff. The decision by Kaiser to impose the most harsh penalty available, discharge, for Plaintiff's insubordination is one properly within Kaiser's managerial discretion. The fact that a reviewing court or jury may have exercised that discretion in a more paternalistic fashion by imposing a penalty less severe than dismissal, is of no moment in determining whether Kaiser's personnel decision gives rise to a cause of action for breach of contract. Stated another way, the Plaintiff may or may not have been treated fairly, but his mistreatment does not give rise to a legally cognizable claim for damages.

The Clerk is directed to send a certified copy of this Memorandum Opinion and Order to counsel of record.