Emmett **BAKER**, Plaintiff,

v.

**KAISER ALUMINUM AND CHEMICAL CORPORATION, a corporation, Does 1 through 100, inclusive, Defendants.**

No. C–83–4226–WWS.

United States District Court, N.D. California.

Oct. 10, 1984.

in opposition.

Herbert L. Michel, Jr., Los Angeles, Cal., for plaintiff.

Joe C. Creason, Jr., Anne E. Libbin, Pillsbury, Madison & Sutro, San Francisco, Cal., for defendants.

## MEMORANDUM OF OPINION AND ORDER

SCHWARZER, District Judge.

Plaintiff Emmett Baker originally brought this action in state court against defendant Kaiser Aluminum and Chemical Corporation for wrongful discharge. Defendant removed the action to this Court and now moves for summary judgment.

## FACTS AND PROCEDURAL BACKGROUND

Plaintiff was employed for 15 years by defendant at its San Leandro, California, plant. He was hired initially as an hourly employee and was promoted to shift fore-. man, a salaried position, in approximately April 1975. In January 1982, the San Leandro plant was experiencing problems with theft from the storeroom where tools and spare parts are kept. To remedy these problems, John Fuentes, the San Leandro Production and Maintenance Superintendent, held a special Saturday meeting on January 23, 1982, with all production and maintenance foremen. Plaintiff attended this meeting. Fuentes informed the foremen that the lock on the storeroom door had been changed, that only foremen and storeroom keepers would have keys, and that the foreman would accompany hourly employees to the storeroom at all times on the off-shifts to obtain needed equipment. The foremen were told that they were not to give their keys to non-salaried employees.

In March 1982, on two different occasions, plaintiff gave the storeroom key to a non-supervisory employee to obtain needed parts from the storeroom. Plaintiff asserts that he was unable to leave the floor to accompany the employee. Upon learning of these violations of his order, Fuentes terminated plaintiff on March 23, 1982. At the time that he was terminated, plaintiff was 51 years old and had two more years of service remaining before he qualified for defendant's early retirement benefits.

Plaintiff originally filed this action in state court. His second amended complaint states the following causes of action: (1) breach of implied-in-fact covenant of employment and benefits; (2) interference with a beneficial contractual relationship; (3) wrongful termination; (4) breach of the implied covenant of good faith and fair dealing.

In September 1983, defendant removed the action to this Court after defendant discovered through the taking of depositions that plaintiff intended to rely on language in employee benefit plans as a basis for his claimed right of employment and to claim that he was terminated in order to prevent him from obtaining early retirement benefits. Defendant contended that such claims would be pre-empted by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* The Court denied plaintiff's motion to remand on October 24, 1983. Defendant now moves for summary judgment.

## DISCUSSION

Plaintiff's second amended complaint states claims pre-empted by ERISA as well as pendent state claims.

### I. ERISA CLAIMS

A. *Interference with Beneficial Contractual Relationship*

██ The second cause of action alleges that defendant interfered with "written contracts with various third parties providing certain rights and benefits for employees ... and their spouses." It became clear in the course of depositions that the

"contracts" to which plaintiff refers are defendant's pension and benefit plans promulgated in accordance with ERISA. Though plaintiff makes no reference to ERISA in his complaint, a complaint that is "artfully pleaded" to avoid federal jurisdiction may be recharacterized as one arising under federal law. *Franchise Tax v. Construction Laborers Vacation Trust Board,* 463 U.S. 1, 103 S.Ct. 2841, 2853, 77 L.Ed.2d 420 (1983). To determine whether a complaint is "artfully pleaded," the court is not bound to consider only the facts pleaded in the complaint, but may look elsewhere, as in deposition testimony, to ascertain facts that would appear in a well pleaded complaint. See *Olguin v. Inspiration Consol. Cooper Co.,* 740 F.2d 1468, 1472 (9th Cir.1984).

■ Section 514(a) of ERISA provides that ERISA "supersedes any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The Supreme Court has held that state law is pre-empted as relating to an employee benefit plan "if it has a connection with or reference to such a plan." *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). Plaintiff's claim that he had a contractual right to employment based on defendant's pension and benefit plans is a question that "relate[s] to employee benefit plans" within *Shaw's* broad pre-emption scope.

Defendant points out that its various pension and benefits plans include the following "Limitation on Rights" provision: "Participation in the Plan gives rise to no rights to continued employment by an Employer nor to any claim to any benefit hereunder except as expressly provided in this Plan." Ottenbacher Decl., Exhs. A, B & C, Defendant's Motion for Summary Judgment. Plaintiff's argument appears to assert that this language demonstrates an employment agreement between defendant and plaintiff which does not expressly reserve to defendant the right to terminate an employee without cause or before his benefits have vested.

■ Plaintiff's argument is without merit. The language of the "Limitation on Rights" provision does not constitute an employment agreement. The purpose of ERISA is not to guarantee employment; its purpose is to ensure the integrity of employee benefit plans and to protect the rights of plan participants to accrued benefits under those plans. See 29 U.S.C. § 1001(b). The mere fact that defendant provides employee benefit plans for its employees does not place it under a duty to maintain them in its employ. See *Craig v. Bemis Company, Inc.,* 517 F.2d 677, 684 (5th Cir.1975); *Shaw v. Kruidenier,* 470 F.Supp. 1375, 1388 (S.D.Iowa 1979). The "Limitation on Rights" provision serves to alert employees to this fact.

**B.** *Wrongful Discharge Depriving Plaintiff of Early Retirement Benefits*

■ Plaintiff's claim that he was wrongfully discharged so as to deny him maximum pension benefits is pre-empted by ERISA. Section 510 of ERISA states that it is unlawful for an employer to "discharge ... a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. Section 1140 prevents an employer from arbitrarily discharging an employee whose pension rights are about to vest. See *Lojek v. Thomas,* 716 F.2d 675, 680 (9th Cir.1983). To recover under § 1140, plaintiff must show that defendant terminated him with the "specific intent" to interfere with his rights under defendant's benefit plans. *Watkinson v. Great Atlantic & Pacific Tea Co., Inc.,* 585 F.Supp. 879, 883 (E.D.Pa.1984); *Titsch v. Reliance Group, Inc.,* 548 F.Supp. 983, 985 (S.D.N.Y.1982).

Defendant asserts that the termination in no way interfered with plaintiff's vested pension rights. Plaintiff has been "one hundred percent" vested in defendant's Retirement Plan since 1977 when he completed 10 years of service with the company. A salaried employee with vested rights un-

der the Retirement Plan can receive any one of three types of retirement, depending upon the circumstances with which he ends employment with defendant: (1) normal retirement (2) early retirement with actuarially reduced pension; (3) "deferred vested pension" applicable to an employee terminated before eligibility for early retirement. Payments begin at age 62, or reduced payments at age 55. Baker Dep. Exhibit 13, Defendant's Motion for Summary Judgment. At the time that he was terminated, plaintiff was entitled to benefits under the Deferred Vested Pension plan. Further, his benefits under the Supplemental Savings and Retirement Plan and a Tax Credit Employee Stock Ownership Plan were fully vested as soon as he became a participant in these plans.

Plaintiff does not dispute the fact that his pension rights had vested, but rather asserts that defendant terminated him to prevent him from qualifying for early retirement. Defendant contends that it terminated plaintiff for two violations of the storeroom key rule, a legitimate, business-related reason for discharge demonstrating no invidious intent. "No ERISA cause of action [under § 1140] lies where the loss of ... benefits was a mere consequence of, but not a motivating factor behind, a termination of employment." *Titsch v. Reliance Group, Inc.*, 548 F.Supp. at 985. Plaintiff responds that this reason is pretextual. He points to the "arbitrary and capricious" nature of the discharge. Plaintiff asserts that John Fuentes never stated that the penalty for giving out the storeroom key would be discharge. Baker Dep. 78:27–79:1, Plaintiff's Opposition to Summary Judgment Motion. John Fuentes had issued orders in the past and had never discharged anyone for violating those orders. Baker Dep. 78:1–78:28. Plaintiff also states that he was forced to give the key to a non-salaried employee, rather than go to the storeroom himself, because of emergency situations on the floor. Baker Dep. 166:1–179:28; 176:1–177:28.

■ It is undisputed that the reason given plaintiff for his termination was his violation of the storeroom key rule. The question raised is whether the reason given was pretextual. The court must be particularly cautious in deciding whether to grant summary judgment where issues of intent or motivation are involved. *Haydon v. Rand Corp.*, 605 F.2d 453, 455 n. 2 (9th Cir.1979). In *Watkinson v. Great Atlantic & Pacific Tea Co., Inc., supra*, the district court addressed a similar claim where a plaintiff alleged that he was discharged to prevent him from attaining enhanced pension rights arising from continued employment. The court stated:

> [A]s defendants correctly noted, in order to prevail under the theory plaintiff advances, he must show defendant's "specific intent" to violate ERISA. (citation omitted.) While this may present a difficult problem of proof at trial, it serves to avoid summary judgment. As a general rule, summary judgment is inappropriate in actions involving state of mind.

585 F.Supp. at 883.

■ On the other hand, "a party against whom summary judgment is sought is not entitled to a trial simply because he has asserted a cause of action to which state of mind is a material element. There must be some indication that he can produce the requisite quantum of evidence to enable him to reach the jury with his claim." *Hahn v. Sargent*, 523 F.2d 461, 468 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). The only evidence offered by plaintiff is that if he had not been terminated, he would have been able to accrue additional benefits. It is undisputed that no benefits previously earned would have been forfeited by reason of the discharge. Thus, regardless of whether the discharge was arbitrary and capricious, its impact on benefits was only incidental—the resulting loss was simply that which would result from any discharge, i.e. a loss of wages and other benefits earned on account of work to be performed in the future.

## II. *State Law Claims*

Plaintiff's first, third and fourth causes of actions raise state law claims "growing out of the same nucleus of operative facts" and can be considered by this Court under its pendent jurisdiction. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 735, 86 S.Ct. 1130, 1143, 16 L.Ed.2d 218 (1966). These causes of action are premised on plaintiff's assertion that plaintiff could only be terminated "for just cause" and that his termination in March 1982 was without cause. Plaintiff patterns his causes of action on the three distinct theories of wrongful discharge that have been developed by the California courts: (1) a cause of action for employer's breach of an implied-in-fact covenant to terminate only for cause. *Pugh v. See's Candies, Inc.*, 116 Cal.App.3d 311, 171 Cal.Rptr. 917 (1981); (2) a tort cause of action for wrongful discharge in violation of public policy. *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 164 Cal.Rptr. 839, 610 P.2d 1330 (1980); (3) a cause of action for the employer's breach of the implied covenant of good faith and fair dealing which sounds both in tort and contract. *Cleary v. American Airlines, Inc.*, 111 Cal.App.3d 443, 168 Cal.Rptr. 722 (1980).

### A. *Implied-In-Fact-Contract*

■ The general rule governing employment contracts in California is codified in California Labor Code § 2922: "An employment, having no specified term, may be terminated at the will of either party on notice to the other." This statute creates a presumption that an employment contract is terminable at will. *Pugh v. See's Candies, Inc.*, 116 Cal.App.3d at 324, 171 Cal. Rptr. 917. This presumption "is subject, like any presumption, to contrary evidence. This may take the form of an agreement, express or implied, that the ... employment relationship will continue indefinitely, pending the occurrence of some event such as the employer's dissatisfaction with the employee's service or the existence of some 'cause' for termination." *Id.* at 324–25, 171 Cal.Rptr. 917, footnotes omitted. Courts consider a variety of factors in determining whether an implied-in-fact promise of continued employment exists, such as personnel policies, the employee's longevity of service, and communication by the employer reflecting assurances of employment. *Id.* at 327, 171 Cal.Rptr. 917.

■ The *Pugh* analysis, however, applies only in the absence of an express agreement. A valid express agreement precludes a contradictory implied contract embracing the same subject matter. *Crain v. Burroughs Corp.*, 560 F.Supp. 849, 852 (C.D.Cal.1983); *Crossen v. Foremost-McKesson, Inc.*, 537 F.Supp. 1076, 1077 (N.D.Cal.1982); *Hillsman v. Sutter Community Hospitals*, 153 Cal.App.3d 743, 754, 200 Cal.Rptr. 605 (1984); *Shapiro v. Wells Fargo Realty Advisors*, 152 Cal. App.3d 467, 482, 199 Cal.Rptr. 613 (1984).

Plaintiff signed a written agreement with defendant on April 1, 1975, at the time he was promoted to shift foreman. See Baker Dep., Exh. A, Defendant's Motion for Summary Judgment. This agreement states that as a condition of continued employment with defendant, plaintiff agrees to comply with certain requirements regarding confidentiality and development of defendant's patents. With respect to the term of employment, the agreement states: "Employer employs and shall continue to employ Employee at such compensation and for such a length of time as shall be mutually agreeable to Employer and Employee."

■ Plaintiff does not dispute the existence of this agreement but makes two arguments regarding its content. First, he characterizes the document as a "patent agreement" and contends that it is too "peripheral" a document to qualify as an employment agreement. This argument is without merit; the plain language of the agreement indicates that it covers conditions of employment. See *Shapiro v. Wells Fargo Realty Advisors*, 152 Cal. App.3d 467, 199 Cal.Rptr. 613 (1984) (stock option agreement with clause relating to conditions of employment is binding contract for termination at will.)

Second, plaintiff contends that even if this document could be characterized as an employment agreement, the provision which states that defendant may employ plaintiff for "a length of time as shall be mutually agreeable to Employer and Employee" is "silent" as to whether termination at will is possible. He relies on *Hillsman v. Sutter Community Hospital of Sacramento*, 153 Cal.App.3d 743, 200 Cal. Rptr. 605 (1984), for support. In *Hillsman* plaintiff and defendant entered into an employment agreement in the nature of a "letter of understanding." The agreement provided in part that "[i]t is further understood that renegotiation or termination of this letter of understanding by either party may be accomplished upon thirty days notice." *Id.* at 748, 200 Cal.Rptr. 605. The court found that because the language was silent as to whether the agreement could be terminated with or without cause, the language did not rebut the presumption of California Labor Code § 2922 that employment is terminable at will by either party. The plaintiff argued, however, that there was an implied-in-fact promise between the parties that plaintiff would not be terminated except upon grounds and according to procedures set forth in the defendant's bylaws. The court rejected defendant's response that an implied-in-fact covenant cannot contradict an express provision of the letter of understanding, stating that there was no readily ascertainable conflict between plaintiff's implied contract theory and the express terms of the agreement: "[t]he salient language of the letter agreement simply provides that 'termination ... by either party may be accomplished upon thirty days notice'.... It does not state, for example, that termination of the agreement could be accomplished 'for any reason' or 'at will' or 'without cause.'" *Id.* at 755, 200 Cal.Rptr. 605. The agreement did not preclude plaintiff's assertion that termination was to be in accordance with the defendant's bylaws because "the letter's failure to refer to termination-for-cause created an evidentiary void insufficient to rebut the presumption of employment at will. We now conclude the same void in

contract language cannot be used to defeat plaintiff's expressly pleaded theory of implied contract." *Id.*

■ Unlike the agreement of *Hillsman*, the instant agreement, providing specifically that employment is to continue only so long as "shall be mutually agreeable to [both parties]" creates a terminable at will arrangement. The identical provision was so interpreted in *Murray v. Kaiser Aluminum and Chemical Corporation*, 591 F.Supp. 1550 (S.D.W.Va., 1984):

> Giving the words "mutually agreeable" their general and ordinary meaning, the construction commanded by the language is inescapable—if either party no longer desires the employment to continue, the employment would no longer be "mutually agreeable" and could be terminated by the party desiring to do so. In short, either plaintiff or Kaiser had the right to unilaterally end the employment relationship.... The Court concludes as a matter of law that Plaintiff was an "at will" employee of Kaiser and, therefore, could be discharged at any time, with or without cause.

*Id.* 1553–1554.

A *Pugh*-type implied-in-fact cause requirement is therefore precluded as a matter of law by the express terms of the April 1, 1975 agreement.

### B. *Wrongful Discharge under Tameny v. Atlantic Richfield Company*

■ An at-will employee may maintain a tort cause of action for wrongful discharge if he can show that his "'employer's motivation for [a] discharge contravenes some substantial public policy principle.'" *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d at 177, 164 Cal.Rptr. 839, 610 P.2d 1330. This requirement can be met by proof that the plaintiff was discharged in retaliation for asserting his statutory right, or his refusal to perform an illegal act at the request of the employer, or because his employer directly violated a statute or public policy by dismissing him. *Shapiro v.*

*Wells Fargo Realty Advisors,* 152 Cal. App.3d at 477, 199 Cal.Rptr. 613.

■■■ Plaintiff contends that defendant discharged him in contravention of "the express public policy of the state of California" in that it discharged him without good cause and wrongfully denied him the opportunity to continue in employment to obtain maximum benefits. In *Newfield v. Insurance Co. of the West,* 156 Cal.App.3d 440, 203 Cal.Rptr. 9 (1984), the California Appellate court held that such allegations do not establish a cause of action under *Tameny,* since job security is not, in itself, a substantial public policy sufficient to support a cause of action for wrongful discharge:

> There is no public policy that people are or should be entitled to permanent employment or that an employer is not entitled to discharge an employee. The law as set forth by statute reflects a contrary policy. The general rule codified in Labor Code section 2922 provides that "An employment, having no specified term may be terminated at the will of either party...."

Id. at 444, 203 Cal.Rptr. 9.

To the extent that plaintiff's claim alleges discharge in violation of a public policy regarding employment benefits, it is preempted by § 510 of ERISA. See Section II, B.

■■■ Plaintiff, in his Opposition, raises for the first time an allegation that he was discharged because of his religious beliefs. The allegation is merely conclusory, no facts having been presented. Moreover, there is no common law cause of action for employment discrimination in California. Baker's exclusive remedy for such discrimination is under the California Fair Employment and Housing Act, Govt.Code § 12900 *et seq.*[1] See *Ambrose v. Natomas Co.,* 155 Cal.App.3d 397, 402, 202 Cal.Rptr. 217 (1984); *Strauss v. A.L. Randall Co.,* 144

Cal.App.3d 514, 519–521, 194 Cal.Rptr. 520 (1983).

### C. *Breach of the Implied Covenant of Good Faith and Fair Dealing*

Finally plaintiff attempts to assert a tort cause of action for breach of the implied covenant of good faith and fair dealing, relying on *Cleary v. American Airlines, Inc., supra.* In *Cleary,* plaintiff, an employee of American Airlines for 18 years, brought an action against his employer alleging that he was wrongfully discharged because of his union activities. Plaintiff had no written employment agreement with his employer. The court noted that "the termination of employment without legal cause [after 18 years of service] offends the implied-in-law covenant of good faith and fair dealing contained in all contracts, including employment contracts." Id. 111 Cal.App.3d at 455, 168 Cal.Rptr. 722. The *Cleary* decision, however, as *Pugh* noted, "rested upon the employer's acceptance of responsibility for refraining from arbitrary conduct, as evidenced by its adoption of special procedures for adjudicating employee grievances." *Pugh v. See's Candies, Inc.,* 116 Cal.App.3d at 329, 171 Cal.Rptr. 917. American Airlines had failed to apply those procedures in plaintiff's case.

In two recent cases, the California appellate court considered the tort, but rejected its application to the facts of those cases. In *Shapiro v. Wells Fargo Realty Advisors, supra,* the court analyzed the tort in light of its application in *Cleary* and *Sawyer v. Bank of America,* 83 Cal.App.3d 135, 145 Cal.Rptr. 623 (1978), the first non-insurance case which considered extending the tort. *Shapiro* noted that *Cleary* rested on the fact of plaintiff's longevity of service together with the expressed policy of the employer of providing specific procedures for adjudicating employee disputes. Neither of these factors was present in *Shapiro.* In analyzing *Sawyer,* moreover,

---

**1.** Plaintiff's reliance on *Patsy v. Board of Regents of State of Florida,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) for the proposition that he should not be required to first exhaust his state administrative remedies is misplaced. *Patsy* applies only to actions brought pursuant to 42 U.S.C. § 1983.

the court noted that "the *Sawyer* court stated that the breach of the covenant of good faith and fair dealing consists of bad faith actions extraneous to the contract, combined with the obligor's intent to frustrate the obligee's enjoyment of contract rights." *Id.* 152 Cal.App.3d at 478–79, 199 Cal.Rptr. 613, *Shapiro* concluded that plaintiff had not stated a cause of action under *Sawyer* because "Shapiro has not alleged facts sufficient to show a bad faith act by Wells Fargo which was extraneous to the employment relationship and was intended to frustrate the enjoyment of contractual rights." *Id.* at 479, 199 Cal.Rptr. 613.

In *Newfield v. Insurance Co. of the West, supra,* plaintiff was discharged two years after entering into an alleged oral employment contract in which it was agreed that he would have a "permanent career" with his employer. The *Newfield* court held that plaintiff failed to state a cause of action under the implied covenant of good faith and fair dealing because he did not demonstrate any factors such as "longevity of service, established personnel policies, ... policies within the industry, lack of criticism of the employee's work and oral representation and assurances." 156 Cal.App.3d at 445, 203 Cal.Rptr. 9. The court stated:

> California courts have repeatedly considered situations where violation of the implied covenant of good faith and fair dealing has been alleged as a result of "termination without good cause." The courts have refused to recognize any such cause of action based on the naked covenant alone.... [T]he rulings were *always* predicated upon other public policy grounds, statutory violations, or express (or clearly implied) contract

grounds, or upon a combination of elements (e.g., especially longevity of service together with some added element (*Cleary*) 18 years and company policies; (*Pugh*) 32 years and company policies, faithful service and lack of criticism). *Id.*

■ While plaintiff can establish longevity of service and lack of criticism of his work, the crucial additional factor is lacking. Unlike *Cleary,* here there was no established procedure for adjudicating disputes regarding management employees;[2] unlike *Pugh,* there was an express written contract providing for termination at will without cause; and unlike *Sawyer,* there was no act extraneous to the employment relationship. Thus plaintiff has failed to present facts which would sustain a verdict on this theory.[3]

For the reasons stated, plaintiff has failed to demonstrate that, accepting the facts offered by him as having been proved at trial, he would be entitled to recover on any theory of law. Defendant's motion for summary judgment must therefore be granted.

IT IS SO ORDERED.

---

2. Plaintiff's argument that he was discharged without application of the company's progressive discipline procedures which would have required a prior warning before discharge is without merit. These procedures apply only to hourly employee.

3. Plaintiff derives no assistance from the recent decision in *Seaman's Direct Buying Service, Inc. v. Standard Oil Co.,* 36 Cal.3d 752, 206 Cal.Rptr. 354, 686 P.2d 1158 (1984). The most that can be said of that decision is that it "recognize[d] that a party to a contract may incur tort remedies when, in addition to breaching the contract, it seeks to shield itself from liability by denying, in bad faith and without probable cause, that the contract exists." 36 Cal.3d at 770, 206 Cal. Rptr. 354, 686 P.2d 1158. This reasoning does not apply here.