Jackie D. **MALONE**, **Plaintiff**,

v.

**GILMAN PAPER COMPANY**,
**Defendant.**

**Civ. A. No. 289–96.**

United States District Court,
S.D. Georgia,
Brunswick Division.

April 6, 1990.

Douglas Adams, Brunswick, Ga., for plaintiff.

Wallace E. Harrell, Brunswick, Ga., for defendant.

## ORDER

ALAIMO, District Judge.

Plaintiff brings the instant action claiming that the defendant terminated his employment in violation of § 510 of the Employee Retirement Income Security Act (hereinafter "ERISA"), 29 U.S.C. § 1140. The case is currently before the Court on the defendant's motion for summary judgment. For reasons expressed below, this motion will be granted.

## FACTS

Plaintiff began employment with the accounting department of Gilman Paper Company (hereinafter "Gilman" or "employer") in 1954, and worked in that capacity until retiring on July 1, 1986. Throughout the period of his employment with Gilman, plaintiff was a participant in the "Gilman Paper Company Pension Plan For Salaried and Clerical Employees." Plaintiff's rights under this plan were fully vested at the time of his retirement, and he is now receiving benefit payments. Since he was only 56 years old at the time of his retirement, however, plaintiff's pension benefits are not as great as the benefits he would have received had he retired at age 62.

Plaintiff denies that he voluntarily elected to enter early retirement. Rather, he claims that Gilman presented him with a "Hobson's choice" of either retiring immediately or facing virtually certain termination. Plaintiff alleges that his employer forced him into premature retirement in order to avoid paying the greater pension benefits to which plaintiff would have been entitled had he retired at age 62.

Gilman claims that it eliminated plaintiff's position in an effort to restructure and trim the accounting department, and claims that it gave plaintiff the option of either retiring or taking an alternative position with the company at a reduced salary. Gilman denies that its actions were motivated by a desire to thwart plaintiff's pension benefits.

## DISCUSSION

ERISA § 510 makes it unlawful for an employer to discharge an employee "for the purpose of interfering with the attainment of any right to which such [employee] may become entitled under [a pension] plan...." 29 U.S.C. § 1140. To recover under this section, "plaintiff must show that defendant terminated him with the 'specific intent' to interfere with his rights under defendant's [pension] plan." *Baker v. Kaiser Aluminum and Chemical Corp.*, 608 F.Supp. 1315, 1318 (N.D.Ca. 1984). *See also Titsch v. Reliance Group, Inc.*, 548 F.Supp. 983, 985 (S.D.N.Y.1982) (same), *aff'd without op.*, 742 F.2d 1441 (2nd Cir.1983). No ERISA cause of action lies where the loss of pension benefits "was a mere consequence of, but not a motivating factor behind" the plaintiff's termination. *Titsch, supra,* at 985.

In its motion for summary judgment, counsel for Gilman argues only that there is no evidence from which the finder of fact reasonably could conclude that Gilman acted with the specific intent to thwart plaintiff's pension rights. Unfortunately, counsel's brief does not raise the truly dispositive issue presented here; the Court's own research has revealed a long line of cases holding that an employee whose pension rights are vested at the time of his termination cannot invoke the protections of

§ 510. *See, e.g., Silverman v. Barbizon School of Modeling & Fashion, Inc.,* 720 F.Supp. 966, 971 (S.D.Fla.1989); *Kelly v. Chase Manhattan Bank,* 717 F.Supp. 227, 232 (S.D.N.Y.1989); *Johnson v. United Airlines, Inc.,* 680 F.Supp. 1425, 1432–33 (D.Haw.1987); *Corum v. Farm Credit Services,* 628 F.Supp. 707, 717–18 (D.Minn. 1986); *Donohue v. Custom Management Corp.,* 634 F.Supp. 1190 (W.D.Pa.1986); *Moehle v. N.L. Industries, Inc.,* 646 F.Supp. 769, 779 n. 6 (E.D.Mo.1986), *aff'd without op.,* 845 F.2d 1027 (8th Cir.1988); *Baker v. Kaiser Aluminum and Chemical Corp.,* 608 F.Supp. 1315, 1319 (N.D.Ca. 1984).

The reasoning of the courts in the *Corum* and *Baker* cases is particularly illustrative. In both of these cases, the courts considered—and rejected—claims identical to those made by the plaintiff *sub judice.* The *Corum* court explained its holding as follows:

> The purpose of [§ 510] was primarily to prevent "unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights." Since plaintiff's pension rights were vested, he cannot maintain that defendant fired him in order to prevent plaintiff from obtaining vested pension rights.... Nevertheless, plaintiff argues that defendant violated ERISA because in discharging plaintiff, defendant prevented plaintiff from accruing the additional benefits which are associated with continued employment. In order to recover on his ERISA claim, plaintiff must establish that defendant discharged him with the specific intent to interfere with plaintiff's rights under defendant's protected benefit plans. Denying a vested employee the opportunity to accrue additional benefits, however, has only an incidental effect on plaintiff's right to benefits. Such an impact, moreover, "would result from any discharge." Where the only evidence that an employer specifically intended to violate ERISA is the employee's lost opportunity to ac-

crue additional benefits, the employee has not put forth sufficient evidence to defeat summary judgment.

*Corum,* 628 F.Supp. at 717–18 (citations omitted). The *Baker* court followed similar reasoning in reaching its conclusion:

> Plaintiff does not dispute that his pension rights had vested, but rather asserts that defendant terminated him to prevent him from qualifying for [the larger benefits he would receive if he had retired at age 65].... The only evidence offered by plaintiff is that if he had not been terminated, he would have been able to accrue additional benefits. It is undisputed that no benefits previously earned would have been forfeited by reason of the discharge. Thus, regardless of whether the discharge was arbitrary and capricious, its impact on benefits was only incidental—the resulting loss was simply that which would result from any discharge, i.e. a loss of wages and other benefits earned on account of work to be performed in the future.

*Baker,* 608 F.Supp. at 1318–19. Somewhat more succinct, though no less persuasive, is the reasoning of the court in *Moehle:* "[Plaintiffs] have not alleged facts which would state a claim for relief under [§ 510].... [P]laintiffs were vested and [§ 510] is designed to prevent employers from discharging employees in order to prevent vesting." 646 F.Supp. at 779 n. 6.

The Court's research has revealed no cases within the Eleventh Circuit addressing the specific question presented here; it is apparently an issue of first impression in this jurisdiction. Although there is some authority in support of plaintiff's position,[1] the Court is persuaded by both the quantity and the reasoning of the above-cited cases from our sister jurisdictions holding that a vested employee *cannot* recover under § 510.

This interpretation of the statute is supported by an examination of its legislative history. This legislative history indicates that the intent of Congress in passing

---

**1.** *See Nemeth v. Clark Equipment Co.,* 677 F.Supp. 899, 907 (W.D.Mich.1987) (holding that § 510 "provide[s] a remedy for employees whose pension rights have vested and whose ... injury is the lost opportunity to accrue additional benefits").

§ 510 was to prevent employers from arbitrarily discharging employees who are on the eve of obtaining vested pension rights. *See, e.g.,* Remarks of Senator Hartke, 119 Cong.Rec. 30374 (Section 510 is intended to protect those "vulnerable" employees "whose substantial pension potentialities provide an incentive to their discharge *before vesting.*") (emphasis added). Nothing in the legislative history indicates that Congress intended to require that employers retain already-vested employees until such time as their vested benefits reach a maximum level.

CONCLUSION

Accordingly, the Court holds that plaintiff has no cause of action under § 510. Plaintiff's pension rights were vested at the time of his departure from Gilman, and Gilman freely concedes that those vested rights have not been extinguished. Indeed, plaintiff is currently receiving the level of benefits to which he was entitled as of the date of his termination. Plaintiff's termination affected his pension rights only in the most incidental respect; he has been denied the opportunity to accrue the increased pension benefits which are associated with continued employment. As the legislative history and the above cases make clear, this is not an interest protected by the statute. Defendant's motion for summary judgment is, therefore, GRANTED. The Clerk of the Court is directed to enter an appropriate judgment.

SO ORDERED.