**JAVELIN CORPORATION,**
Plaintiff-Appellant,

v.

**UNIROYAL, INC., et al.,**
Defendants-Appellees.

No. 75–1481.

United States Court of Appeals,
Ninth Circuit.

Oct. 12, 1976.

Rehearing and Rehearing En Banc
Denied Jan. 13, 1977.

C. Q. Britton (argued), of Sullivan, Jones & Archer, San Diego, Cal., for plaintiff-appellant.

John R. Reese and M. Laurence Popofsky (both argued), San Francisco, Cal., for defendants-appellees.

Before CARTER, LAY,\* and WRIGHT, Circuit Judges.

JAMES M. CARTER, Circuit Judge:

This is a private antitrust action alleging violations of the Sherman Act, 15 U.S.C. § 1. Plaintiff Javelin Corporation appeals from a district court order granting summary judgment to appellees. We reverse in part and affirm in part.

## Facts

In 1962, Tire Brands, Inc.[1] was founded by a group of tire distributors for the purpose of pooling their purchasing power. Tire Brands purchased tires primarily from Uniroyal, which participated in the organization of Tire Brands and produced a tire tradenamed "Sonic" for it. Member distributors were obligated to purchase a minimum quota of tires from Uniroyal to ensure continuous volume purchasing. They also were required to limit their sales to the exclusive territories assigned to them under the group agreement. Sanctions were imposed to enforce these arrangements.

Javelin was founded in 1967 as a wholesaler of tires. Shortly thereafter, Javelin contacted Tire Brands with a view toward obtaining membership. Javelin initially was poorly capitalized and could not finance its own private brand, thereby necessitating its membership in some form of purchasing group with an identified brand of tires. Javelin was admitted into Tire Brands in 1968, fully aware of and subject to the quota and territory requirements. It considered the exclusive marketing area an advantage.

---

\* The Honorable Donald P. Lay, United States Circuit Judge, for the Eighth Circuit, sitting by designation.

1. The organization was originally incorporated as Olympic Distributors, Inc. and subsequently changed its name to Sonic Distributors, Inc. In 1973, the name was changed again to the present Tire Brands, Inc.

Unlike its fellow member distributors, Javelin used telephone contact rather than personal sales calls to its customers. This sales method proved extremely successful and Javelin flourished within its exclusive territory. It marketed three brands of its own in 1969 in competition with other members in their territories.

Development of its own brands resulted in a decreasing dependence on the Uniroyal brand. Javelin's annual percent of quota purchased declined continuously. Finally, in 1972, Javelin was expelled from Tire Brands for failure to maintain an acceptable level of quota sales. It is now one of the largest tire distributing companies in the United States.

In 1973, Javelin filed suit in the United States District Court for the Northern District of California in a complaint alleging three counts of violating § 1 of the Sherman Act. Count I alleged a horizontal conspiracy to allocate exclusive territories. Count II alleged a tie-in agreement based on the fact that distributor members had to purchase stock in Tire Brands as a condition of their membership. Count III claimed the defendants had boycotted Javelin by expelling it from the group. Javelin sought treble damages and injunctive relief.

During a preliminary hearing on April 19, 1974, the district court requested the defendants to move for summary judgment based upon Javelin being *in pari delicto* in the acts alleged. The defendants had not requested summary disposition themselves. After briefs were filed and argument heard, the motion was granted and judgment entered on January 15, 1975.

### In Pari Delicto

The equitable defense of *in pari delicto* or "of equal fault" as applied to private antitrust suits, was severely restricted by the Supreme Court in *Perma Life Mufflers, Inc.*

*v. International Parts Corp.*, 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968).[2] In *Perma Life,* the Court held that "the doctrine of *in pari delicto,* with its complex scope, contents, and effects, is not to be recognized as a defense to an antitrust action." 392 U.S. at 140, 88 S.Ct. at 1985. It was the Court's rationale that preservation of the private antitrust action as "an ever-present threat to deter anyone contemplating business behavior in violation of the antitrust laws" outweighed any inequities that might result should a culpable plaintiff recover a windfall gain. 392 U.S. at 139, 88 S.Ct. 1981, 1984.

The Court refused to decide, however, whether a plaintiff might ever be precluded from recovery because of its participation in the illegal conspiracy. It stated:

"Respondents, however, seek to support the judgment below on a considerably narrower ground. They picture petitioners actively supporting the entire restrictive program as such, participating in its formulation and encouraging its continuation. We need not decide, however, whether such truly complete involvement and participation in a monopolistic scheme could ever be a basis, wholly apart from the idea of *in pari delicto,* for barring a plaintiff's cause of action, for in the present case the factual picture respondents attempt to paint is utterly refuted by the record." 392 U.S. at 140, 88 S.Ct. at 1985.

The Court did not give any guidelines as to what degree of involvement might bar a plaintiff other than to decide that the franchising scheme involved in *Perma Life* did not present such a case.

The courts have struggled with this imprecise standard ever since. In *Premier Electrical Construction Co. v. Miller-Davis Co.,* 422 F.2d 1132 (7 Cir. 1970), the Seventh Circuit said:

> See *Simpson v. Union Oil Co.*, 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964). It seems clear, then, that the Court intended to go well beyond such a case of involuntary participation in *Perma Life.*

**2.** The *in pari delicto* defense, at the time of the *Perma Life* decision in 1968, already was not available as a defense in cases involving economic coercion where the plaintiff had no choice but to deal with the defendant and the restraints were largely for defendant's benefit.

"[W]e believe that *Perma Life* holds only that plaintiffs who do not bear equal responsibility for creating and establishing an illegal scheme, or who are required by economic pressures to accept such an agreement, should not be barred from recovery simply because they are participants." 422 F.2d at 1138.

Thus, only a co-equal in the conspiracy would be barred.

Such a situation faced this court in *Dreibus v. Wilson*, 529 F.2d 170 (9 Cir. 1975). The plaintiff was a co-founder and 50% shareholder of the allegedly wrongdoing corporation. The court adopted the reasoning of the district court's opinion, which stated:

"[E]ven if the establishment of this dealership could constitute monopolization, the plaintiffs cannot recover for it. By their own allegations, plaintiffs are the originating, active persons responsible for its establishment. Although the Supreme Court abolished *in pari delicto* as a defense in antitrust cases, the court [sic] indicated that a high degree of involvement in the illegal act could constitute a defense." 529 F.2d at 174 (citations omitted).

The Fifth Circuit in *Greene v. General Foods*, 517 F.2d 635 (5 Cir. 1975), broadly suggested that it would not maintain *any in pari delicto* type defense, but it expressly did not rule on this point. The court stated:

"We have no occasion here to consider to what extent the 'in pari delicto' doctrine will continue to function in private antitrust litigation, if indeed the plaintiff is equally responsible, or a co-adventurer. * * * Even if we accept General Foods' argument that *in pari delicto* and closely related equitable defenses such as consent and unclean hands are still viable after *Perma Life*—an argument we seriously question—the record shows a great disparity between the plaintiff and the

defendant . . . ." 517 F.2d at 646–47.

*Cf. Kestenbaum v. Falstaff Brewing Corp.*, 514 F.2d 690 (5 Cir. 1975) (while no bar, plaintiff's participation may reduce damages).

Other circuits have emphasized that the plaintiff's participation must be in the formulation stage of a conspiracy to bar recovery. In *South-East Coal Co. v. Consolidation Coal Co.*, 434 F.2d 767 (6 Cir. 1970), *cert. denied*, 402 U.S. 983, 91 S.Ct. 1682, 29 L.Ed.2d 149 (1971), the Sixth Circuit approved an instruction to the effect the plaintiff could not recover if "equally responsible with defendants in the formation of said conspiracy." 434 F.2d at 784. *See also Columbia Nitrogen Corp. v. Royster Co.*, 451 F.2d 3 (4 Cir. 1971).

Such decisions seem to temper *Perma Life's* apparent abolition of the *in pari delicto* defense. *See* ABA Antitrust Developments 298 (2d ed. 1975). We agree that under certain circumstances a plaintiff may be barred from recovery, but believe that the mandate of *Perma Life* and the policy behind it demand that such circumstances be rare, and limited to where a plaintiff participated in the formation of the conspiracy.

▉▉▉ Accordingly, we hold that summary judgment for the defendant was improperly granted in this case. A plaintiff is barred from recovery only when the illegal conspiracy would not have been formed but for the plaintiff's participation. To satisfy this test, the jury must necessarily find that the degree of participation of the plaintiff must be equal to that of any defendant and a substantial factor in the formation of the conspiracy. The instigator of an illegal scheme clearly is barred under this test. Whether founding members of a conspiracy are barred is a question of fact for the jury based on the above test.

▉▉▉ The "but for" standard places a high burden of proof upon any defendant seeking to bar the plaintiff's suit on the basis of joint participation.[3] But the plain-

---

**3.** In adopting this standard, we agree with Justice White, concurring in *Perma Life,* that the problem of who is entitled to recover is one of degree of responsibility posing "the issue of

tiff is suing not only in its own behalf, but as a "private attorney general" representing the public interest. *See Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 329, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); *Olympic Refining Co. v. Carter,* 332 F.2d 260, 264 (9 Cir.), *cert. denied,* 379 U.S. 900, 85 S.Ct. 186, 13 L.Ed.2d 175 (1964). Congress established the private remedy to enlist the public as enforcers of the antitrust laws. The courts should encourage this function.

■ In the case at bar, the record establishes that Javelin entered Tire Brands after the group had been in existence for five years. It did not participate in any way in the formation of Tire Brands, to which Counts I and II of the complaint are directed. It is true that Javelin voluntarily sought membership in the group and actively participated in and benefitted by its restraints. But under the standard we set forth above, this degree of participation falls well short of barring Javelin's cause of action. The district court was in error in granting summary judgment based on the *in pari delicto* defense. *Javelin* is entitled to a jury trial on Counts I and II.

### Refusal to Deal

■ The district court properly interpreted Count III as alleging a refusal to deal in retaliation for Javelin's repudiation of the illegal scheme. To state such a claim, Javelin must produce evidence of repudiation. It did not. Indeed, the record shows that Javelin's continuous failure to meet its annual percentage quotas was the basis for its expulsion from the group.[4]

■ The general standards for granting summary judgment are that the burden is on the moving party to show the absence of

causation in particularized form." 392 U.S. at 146, 88 S.Ct. at 1988.

4. The district court gave Javelin two opportunities to make out its claim. During a second hearing on the motion for summary judgment, Javelin's counsel admitted that it could make no offer of proof as to repudiation. The record also shows the following record of purchases as a member distributor by Javelin:

any genuine issue of material fact. Fed.R. Civ.P. 56. Moreover, the standard for granting summary judgment is even more rigorous in the antitrust context. *See Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976); *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). In *Poller,* the Court stated:

> "We believe that summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, [and] the proof is largely in the hands of the alleged conspirators . . . ." 368 U.S. at 473, 82 S.Ct. at 491.

We find, however, that Javelin's failure to produce evidence of repudiation, coupled with a preponderance of sufficient evidence demonstrating Javelin's continuous failure to meet its annual percentage quotas, permitted the district court to conclude that no material issue of fact exists regarding the alleged retaliatory refusal to deal. The district court's order granting summary judgment as to Count III of Javelin's complaint is therefore affirmed.

Affirmed as to Count III; reversed and remanded for trial as to Counts I and II.

| Years | Sonic Purchases | Per Cent of Quota |
| --- | --- | --- |
| 1968 ............ | $ 808,364 | 77 |
| 1969 ............ | $1,225,684 | 86 |
| 1970 ............ | $1,141,159 | 73 |
| 1971 ............ | $ 425,915 | 24 |
| 1972 ............ | $ 395,697 | 17.6 |