THI–HAWAII, INC., a Hawaii Corporation, Plaintiff-Appellant,

v.

FIRST COMMERCE FINANCIAL CORPORATION, a Nevada Corporation, and Ellaric Corporation, a Hawaii Corporation, Defendants-Appellees.

No. 78–1302.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 12, 1980.

Decided Sept. 15, 1980.

Chad P. Love, Honolulu, Hawaii, argued, Daral G. Conklin, Honolulu, Hawaii, on brief, for plaintiff-appellant.

Wayne P. Nasser, Honolulu, Hawaii, for defendants-appellees.

Before ANDERSON, FERGUSON and NELSON, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

The plaintiff, THI-Hawaii, Inc., (THI) appeals from the granting of summary judgment in defendants' favor on THI's complaint for treble damages, injunctive and declaratory relief under the Sherman Antitrust Act, 15 U.S.C. § 1 et seq., and the Clayton Act, 15 U.S.C. §§ 15 and 26. THI filed its complaint on September 29, 1977. Defendant Ellaric Corporation, later joined by defendant First Commerce Financial Corporation, filed its motion for summary judgment on October 19, 1977, along with its affidavits and exhibits. THI filed no affidavits or other factual responses in opposition to the motion. The district court granted Ellaric's motion following a hearing on November 21.

## I. BACKGROUND

In 1967, AITS, Inc., while in the process of constructing the Hawaiian Regent Hotel in Waikiki, entered into an agreement with an individual named H. B. Rothbard, and First Commerce Financial Corporation (FCFC) whereby AITS agreed to lease to either Rothbard or FCFC 3,000 square feet of commercial space on the ground floor of the hotel. The agreement specified lease provisions, including a monthly rental of $1.00 per square foot, against 8% of the lessee's gross revenues, and granting Rothbard the exclusive right to sell certain items such as tobacco, sundries, and other tourist-oriented items and services within the hotel.

AITS, however, refused to execute the lease itself for reasons unimportant to the present appeal. Rothbard filed suit for specific performance in Hawaii state court, and obtained a decree of specific performance on March 5, 1973. AITS filed a notice of appeal to the Supreme Court of Hawaii. Coincidentally with its legal defeat at Rothbard's hands, AITS sold the Hawaiian Regent to THI-Hawaii, the plaintiff in the present action. THI and FCFC, holder of Rothbard's lease rights, immediately began conducting settlement negotiations.

On August 10, 1973, THI and FCFC entered into an Agreement of Lease which terminated the AITS-Rothbard litigation. Under the new lease, FCFC guaranteed an annual minimum rental of $90,000 per year or 8% of total gross sales if in excess of $1,125,000.00 per year. The lease also obligated FCFC to make improvements in the leased space at a cost of $10.00 per square foot. In FCFC's favor were the carrying over of the exclusive sales provision, and a provision giving FCFC the right to sell additional items on a nonexclusive basis, the right to open a "duty-free" shop, and the right to sell liquor. FCFC immediately subleased the space to Ellaric Corporation, which opened a gift shop known as "The Store."

THI's other commercial tenants at the Hawaiian Regent proved to be less than eager to observe the terms of the exclusive in Ellaric's lease. The record reflects several instances in which Ellaric discovered that items which it allegedly had the exclusive right to sell in the hotel were being sold by other establishments. Ellaric in each instance resorted to demand letters directed toward THI or to other forms of legal persuasion in an attempt to enforce the provisions of the exclusive. An additional sore spot arose sometime in 1976 when THI commenced construction of additional facilities adjacent to the Hawaiian Regent which it claimed were not covered by the exclusive.

The relationship between THI as landlord on the one hand and FCFC and Ellaric as tenants on the other has thus been something of a running battle over the exclusive almost from the time of the inception of the lease.

THI, apparently exasperated over the insistence of FCFC and Ellaric on strict compliance with the terms of the exclusive, took the offensive by filing its antitrust complaint in the present action. The first count charged FCFC and Ellaric with violations of Section One of the Sherman Act, 15 U.S.C. § 1, alleging that the exclusive was an unreasonable restraint of trade, and also that the exclusive constituted a *per se* violation of the antitrust laws. The second count prayed for a declaratory judgment interpreting the lease and declaring it to be illegal. The total relief which THI sought included treble damages, injunctive relief against the enforcement of the exclusive, and the aforementioned declaratory relief.

Ellaric and FCFC countered with a motion for summary judgment, citing four alternative legal grounds, among them THI's involvement in the preparation and negotiation of the lease and its enjoyment of substantial revenues from the lease. In support of its motion, Ellaric filed an affidavit signed by Thomas Mui, president of Ellaric. The Mui affidavit stated, *inter alia*, that the lease was the result of a compromise reached between FCFC and THI over the Hawaiian state court litigation, and that most of the items contained in the exclusive were available from "most shops in Waikiki." Also attached were various papers, including copies of the original lease and the amendments made by THI and FCFC in 1973. A supplemental affidavit from Mui was later filed in which he asserted that less than two per cent of Ellaric's revenue was derived from sales in interstate commerce. An affidavit filed by FCFC in joinder to Ellaric's motion was accompanied by an affidavit signed by H. B. Rothbard in which he stated, *inter alia*, that at no time during the lease negotiations did any representative of THI suggest that the exclusive constituted an unreasonable restraint of trade or violated the antitrust laws. Mui also testified briefly at the hearing on the motion for summary judgment. THI submitted no affidavits in opposition.

The district court, in granting the defendants' motion, found that under a Rule of Reason analysis the exclusive did not render any substantial anti-competitive effect in the relevant market, which the court defined as including the entire Waikiki area. The court also found that THI had confirmed and ratified the exclusive, and was barred from any recovery because of its "truly complete involvement and participation in, and profit from, the exclusive sales provision."

THI's appeal followed.

## II. DISCUSSION

### A. Summary-Judgment

THI, as a preliminary matter, questions whether summary judgment was appropriate in this case on two grounds. THI questions first the timing of judgment, and secondly, the use of summary judgment in an antitrust action.

#### 1. Timing

THI objects to the entry of judgment so soon after the filing of its complaint. The district court granted the defendants' motion less than two months after THI first filed its action and prior to the completion of any discovery.

Fed.R.Civ.P. 56(e) directs that where a motion for summary judgment is filed, the opposing party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e) concludes by noting that "[i]f he does not so respond, summary judgment, if appropriate, shall be entered against him." Under Rule 56(e), if the moving party presents evidence which, taken by itself, would establish the right to a directed verdict at trial then the motion for summary judgment must be granted in the absence of any presentation by the opposing party. *See Neely v. St.*

Paul Fire & Marine Insurance Co., 584 F.2d 341, 343 (9th Cir. 1978); *Donnelly v. Guion*, 467 F.2d 290 (2d Cir. 1972). Once the moving party has met the initial burden of going forward, the opposing party may not defeat summary judgment in the absence of any significant probative evidence tending to support his or her theory. *First National Bank v. Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968); *Commodity Futures Trading Commission v. Savage*, 611 F.2d 270, 282 (9th Cir. 1979).

■ Where the opposing party has not had sufficient time to complete discovery or otherwise marshal facts to oppose the motion, application may be made under Rule 56(f) for a continuance of the proceedings pending completion of discovery. If the opposing party fails to take advantage of Rule 56(f), summary judgment may be entered, if otherwise appropriate. *See British Airways Board v. Boeing Co.*, 585 F.2d 946, 954 (9th Cir. 1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979); *Corbin v. Pan Am. World Airways, Inc.*, 432 F.Supp. 939, 945 (N.D. Calif. 1977).

■ THI's failure to move for a continuance under Rule 56(f) prevents it from complaining of the timing of summary judgment in this case. In the absence of an application for continuance, the district court had before it all of the evidence which it could reasonably conclude would be submitted. There was absolutely no reason to delay entry of judgment. The court did not err in granting the defendants' motion prior to any discovery.[1]

### 2. *Summary judgment in antitrust actions*

■ THI also urges us to reverse summary judgment on the basis of the oft-invoked language of *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) that ". . . summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot." *Id.* at 473, 82 S.Ct. at 491. While we agree that summary judgment is inappropriate under the circumstances described in *Poller*, we do not believe that the Supreme Court intended to ban the use of summary procedures in antitrust actions altogether. As this court noted in *Mutual Fund Investors v. Putnam Management Co.*, 553 F.2d 620 (9th Cir. 1977), *Poller* ". . . has become a magic wand waved indiscriminately by those opposing summary judgment motions in antitrust actions." *Id.* at 624 as a pair of noted scholars in the antitrust field has recently said, *Poller* has no such magical properties:

"The suggestion that summary procedures are less appropriate in antitrust cases may be put aside, for the Federal Rules make absolutely no distinction between antitrust and other cases. Rather, the Court spoke of those antitrust cases in which motive and intent are determinative. More generally, the Court seemed to say that complex antitrust cases frequently involve material disputes of fact that should not be resolved prematurely."

P. Areeda and D. Turner, Antitrust Law ¶ 316b (1978).[2]

The facts of this antitrust action are relatively simple. The parties have entered into a commercial lease which one side now

---

1. At oral argument, counsel for THI candidly admitted that no factual opposition was filed contesting the motion for summary judgment and that no request was made of the district judge for additional time to conduct discovery in an effort to meet and factually oppose the summary judgment motion.

When asked why no opposition was filed and no request for discovery was made, counsel replied, "I didn't think the judge would grant the motion." It is difficult to muster sympathy for counsel in the face of the plain language of Rule 56. Nevertheless, we have thoroughly considered defendants' factual showing in support of the summary judgment motion in order to determine whether the facts presented justified granting the motion as a matter of law.

2. Indeed, the Supreme Court upheld the granting of summary judgment in an antitrust action in *First National Bank v. Cities Service Co.*, *supra*.

claims to be injurious to competition. The defendants have submitted unchallenged affidavits which lay out in a straightforward manner the nature of the transaction and its impact upon the surrounding area. If there are any complicating factors relevant to this case, THI has failed to bring them to the attention of the district court. Because there is nothing before us to indicate that the use of summary judgment should be approached in this case with any greater caution than normal, we hold that on this record *Poller* did not bar the granting of the defendants' motion.

### B. *Complete Involvement*

The district court was correct in concluding that no genuine issue of material fact existed, given the failure of THI to controvert any of the factual assertions contained in the defendants' affidavits. Its only task, therefore, was to determine whether the defendants were entitled to judgment as a matter of law. The district court concluded that defendants were so entitled on the alternative grounds that the lease rendered no substantial anticompetitive effect and that THI's "complete involvement" in the allegedly illegal scheme barred it from recovering. We affirm on the latter ground, and express no opinion on the competitive impact of the lease.

The Supreme Court has determined that the common law defense of *in pari delicto* has no place in federal antitrust litigation. *See Perma Life Mufflers v. International Parts Co.*, 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968). The rationale for the *Perma Life* holding rests on policy considerations of encouraging enforcement of the antitrust laws, even where the plaintiff is perhaps partly to blame for an allegedly anticompetitive scheme. The Court in *Perma Life*, however, left open the question whether "truly complete involvement and participation in a monopolistic scheme could ever be a basis, wholly apart from the idea of *in pari delicto*, for barring a plaintiff's cause of action, . . . " 392 U.S. at 140, 88 S.Ct. at 1985. The Court left the issue open because the facts of *Perma Life* did-

not indicate complete involvement on the part of the plaintiffs there.

■ Several circuits, including our own, have determined that "complete involvement" does constitute a defense to a treble damages claim in an antitrust action. *See, Memorex Corp. v. IBM*, 555 F.2d 1379 (9th Cir. 1977); *Javelin Corp. v. Uniroyal, Inc.*, 546 F.2d 276 (9th Cir. 1976), cert. denied, 431 U.S. 938, 97 S.Ct. 2651, 53 L.Ed.2d 256 (1977); *see also, e. g., Columbia Nitrogen Corporation v. Royster Company*, 451 F.2d 3 (4th Cir. 1971); *Premier Electric Construction Co. v. Miller-Davis Co.*, 422 F.2d 1132 (7th Cir.), cert. denied, 400 U.S. 828, 91 S.Ct. 56, 27 L.Ed.2d 58 (1970). The formulation of the "complete involvement" defense reflects a somewhat uneasy balance between the compelling policy of enforcement of the antitrust laws and the natural desire of any court to recognize the equities as between the parties. In this circuit, a defendant espousing the complete involvement defense must meet the burden of the "but for" test. A plaintiff's recovery is not barred unless the illegal conspiracy would not have been formed but for its participation. *See Javelin Corp. v. Uniroyal, supra*, at 279. As the court in *Javelin Corp.* noted:

> "The 'but for' standard places a high burden of proof upon any defendant seeking to bar the plaintiff's suit on the basis of joint participation. But the plaintiff is suing not only in its own behalf, but as a 'private attorney general' representing the public interest. . . . Congress established the private remedy to enlist the public as enforcers of the antitrust laws. The courts should encourage this function."

*Id.* at 279, 180.

The district court was correct in holding that the defendants have met this high burden of proof. There are no other parties to the lease besides THI on the one hand and the defendants on the other. THI argues that it entered into its lease and accepted the exclusive provision only under compulsion of the specific performance decree. The record reflects otherwise. According to the original Mui affidavit, the

final lease was the result of a "compromise" over the decree. Substantial concessions were given, and substantial gains were made by both sides in arriving at the compromise version of the original lease agreement. In view of the modification of such basic terms as the rental payment and the use to which the premises shall be put, we believe that the final lease agreement can properly be classified as a separate transaction independent of the original agreement entered into by AITS and Rothbard. We also note Rothbard's uncontroverted assertion that THI made no mention of any possible antitrust problem with the exclusive during negotiations for the modified lease agreement. Consequently, this is not a case of a party who has vigorously protested the inclusion of an illegal provision only to be overwhelmed by a party in a superior bargaining position. THI raised no objection to the exclusive until FCFC and Ellaric began insisting upon its observance, and until it began formulating plans to construct an addition to the hotel which would include a major department store. In short, the record reflects an arm's length bargaining process which produced a lease from which THI continues to enjoy a substantial gain. Under these circumstances, the district court was justified in finding that THI was completely involved in the formation of the allegedly illegal agreement.

■ While it is clear that THI's involvement bars any treble damage recovery, it is somewhat less clear that the defense also bars it from seeking injunctive and declaratory relief. The equitable consideration of preventing a windfall gain from the plaintiff's own wrongdoing justifies application of the complete involvement defense to an action for treble damages; the strong policy favoring enforcement of the antitrust laws may stay its application where the plaintiff seeks only to disentangle itself from an agreement which has a substantial anti-competitive effect on commerce. *See* P. AREEDA and D. TURNER, ANTITRUST LAWS, *supra*, at ¶ 348a; *cf. Florists' Nationwide Telephone Delivery Network v. Florists' Telephone Delivery Associ-*

*ation*, 371 F.2d 263 (7th Cir.), *cert. denied*, 387 U.S. 909, 87 S.Ct. 1686, 18 L.Ed.2d 627 (1967). We believe, however, that under the unique facts of this appeal, THI should similarly be barred from receiving either equitable or declaratory relief. THI seeks not to rescind the entire bargain, but rather to have one offending provision red-penciled out of the lease. To so allow THI to escape a single aspect of the total lease agreement would result in a windfall here. THI would, in essence, retain the benefit of the lease with its substantial rental payment, while leaving FCFC and Ellaric without the benefit of the exclusive. THI would also receive the presently incalculable benefit of leasing commercial space to other tenants unhampered by the exclusive. We cannot with good conscience leave THI in so favorable a position. We emphasize that our holding here is based upon a unique and limited set of facts. We continue to adhere to the sound policy of encouraging private enforcement of the antitrust laws.

### III.  CONCLUSION

The judgment of the court below is AFFIRMED.