**Earl JOHNSON, Plaintiff,**

v.

**UNITED AIRLINES, INC. and Jack Wilcox, Defendants.**

**Civ. No. 86–0126.**

United States District Court,
D. Hawaii.

April 1, 1987.

Order Denying Motion to Reconsider
Summary Judgment Aug. 28, 1987.

---

Allison Jacobs–Pendragon, Honolulu, Hawaii, for plaintiff.

Richard M. Rand, Honolulu, Hawaii, N. Morrison Torrey, United Airlines, Inc., Chicago, Ill., for United Airlines, Inc.

Torkildson, Katz, Jossem, Fonseca & Moore, Honolulu, Hawaii, for defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSING STATE LAW CLAIMS WITHOUT PREJUDICE

KAY, District Judge.

Defendants United Airlines, Inc. and Jack Wilcox's Motion for Summary Judg-

ment came on for hearing before the Honorable Alan C. Kay on March 10, 1987 at 10:45 a.m. Plaintiff was represented by Allison Jacobs–Pendragon, and Richard M. Rand appeared for the Defendants. The Court, after reviewing the memoranda filed by the parties and having heard the arguments of counsel and being fully apprised as to the premises therein finds as follows.

This is an action brought by Plaintiff Earl Johnson ("Johnson") against Defendants United Airlines, Inc. ("United") and Jack Wilcox ("Wilcox") alleging that he was fired from his job at United Airlines unlawfully on the basis of his race, age, and national origin in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq. and the ADEA, 29 U.S.C. § 621 et seq. Johnson also sought relief under 42 U.S.C. § 1981, ERISA, 29 U.S.C. § 1001 et seq., and claimed general and punitive damages.

By order dated February 23, 1987, this Court granted in part and denied in part Defendants' Motion to Dismiss; dismissed Plaintiff's claim under H.R.S. Chapter 378 in Count I of the First Amended Complaint because Plaintiff had not filed a charge of discrimination with the State of Hawaii, Department of Labor and Industrial Relations; dismissed without prejudice Plaintiff's allegation under 42 U.S.C. § 1985(3) because Plaintiff had failed to set forth a cause of action stating a claim of conspiracy; dismissed Count VII of the First Amended Complaint because there is no private cause of action for beneficiaries for violations of 26 U.S.C. § 401; and dismissed Count VIII of the First Amended Complaint because Plaintiff's exclusive remedy lies with the State of Hawaii Disability Compensation Division under H.R.S. Chapter 386. Defendants now seek summary judgment on Counts I, II, III, V, VI, and IX of the First Amended Complaint. For the following reasons, Defendants' motion is GRANTED, except that Count IX and Plaintiff's claim entitled "Equity" are dismissed without prejudice.

## I. UNDISPUTED FACTS

The following are the undisputed material facts. Johnson had been employed by United since 1963 and had been a skycap since 1970. When Johnson first became a skycap, he was instructed that skycaps could accept tips, but were prohibited from soliciting them from passengers. Johnson was first based in Boston, and then in May 1971 transferred to Seattle, Washington to get closer to his wife who worked in Los Angeles.

Johnson first came to Hawaii in February, 1976, as one of the first skycaps to work for United in Honolulu. In June 1977, Johnson transferred to Los Angeles to be with his wife. While in Los Angeles, one of Johnson's supervisors was John Cunningham. In an evaluation dated June 6, 1981, Cunningham noted that "on three occasions you have been spoken to about working without your teeth." Johnson testified at his deposition that Cunningham did in fact warn him that he should wear his dentures while working.

In February 1982, Johnson transferred back to Honolulu because of a reduction in force in Los Angeles. Johnson used his seniority to bump within United's system and chose Honolulu over Salt Lake City. In 1983, Johnson's supervisor in Honolulu was Jackie Cooper. Defendant Wilcox was Customer Services Manager in Honolulu and was Cooper's supervisor.

In April 1983, Johnson received a letter of warning from Cooper concerning job performance. The letter advised Johnson that, "Your overall job performance needs immediate and drastic improvement." The letter discussed two separate infractions committed by Johnson. The first was the handling of passenger bags and the second was an allegation that Johnson refused to service a passenger who was traveling with a tour group, Pleasant Hawaiian Holidays. Cooper warned Johnson, "How much a passenger tips you, or if they do not at all, does not determine if you assist them or not." The letter of warning provided that, "I expect to see immediate improvement in this area and overall job performance. Failure to do so will result in further disciplinary action, up to and including discharge from United Airlines." Johnson ad-

mitted that this was a "strong letter" designed to alert an employee that their performance is not acceptable and that further infractions could lead to termination.

On August 28, 1983, Cooper presented Johnson with a periodic evaluation. Again, Johnson was counseled that, "Keep in mind that tipping is at the discretion of the passenger, and any attempt at soliciting could result in discharge." Johnson admitted he understood that the solicitation of tips could lead to immediate discharge.

On July 5, 1984, Johnson was given a "final notice" by Defendant Wilcox for checking a passenger's luggage without first seeing whether the passenger had a ticket for the flight, and for not requiring the passenger to pay excess baggage charges. Because the passenger's ticket was actually in his baggage and could not be recovered, the gravity of Johnson's error was compounded. Johnson does not dispute that the incident occurred and that discipline was warranted for it.

When Wilcox discussed the incident with Johnson, he emphasized to Plaintiff that any further infractions of United's policies would result in his discharge. Johnson indicated that he understood that there would be no more chances.

On or about August 30, 1984, Wilcox received a written statement from Paula Pitoy, a United Airlines employee in Honolulu, reciting an allegation that Johnson had solicited tips from a group of passengers traveling out of Honolulu. When Wilcox received this complaint, he reviewed Johnson's personnel file and discovered another complaint written by Mrs. Gerald Stout accusing Johnson of soliciting tips from her in February 1984. However, Wilcox did not use the Stout complaint in making his decision to terminate Johnson because Johnson denied ever seeing the Stout complaint prior to September 1984.

On August 31, 1984, Wilcox called Johnson into his office to notify him of the charges against him, and gave him a letter stating that an investigation hearing would be held on Tuesday, September 4, 1984, to discuss allegations that Johnson had solicited gratuities.

An investigation hearing was held on September 4, 1984 in Wilcox's office. Johnson and his wife, Wilcox and supervisor Pitoy who received the complaint, were in attendance. Johnson was provided with copies of the Stout complaint, although it was never used against him, and Pitoy's written recitation of a complaint by passenger Sandra Jikaku that Johnson had told her and other members of her group that he would have to "go on welfare" if passengers used carts instead of skycaps. Jikaku's brother Dwight Yamaguchi is a United flight attendant who was with the group and first brought the incident to Pitoy's attention.

In the September 4, 1984 meeting, Pitoy described how the passenger did not know the name of the skycap who was involved, but while her flight was delayed returned to the lobby and asked another skycap who were the black skycaps on duty. Mrs. Jikaku was given a choice between a taller and a shorter skycap and picked Johnson. Jikaku also stated that the skycap who had solicited tips had been missing teeth.

Johnson denied having solicited tips and no decision was made at the end of the meeting. However, after the meeting Wilcox called Mrs. Jikaku directly, and after being satisfied that Johnson was the skycap involved in the incident, decided to terminate him. Thereafter on September 5, 1984, Wilcox presented Johnson with a letter of termination reciting Johnson's prior performance problems and the fact that Johnson admitted to having received copies of "You and United" which states that the solicitation of tips is grounds for termination.

After his discharge, Johnson applied for unemployment benefits from the State of Hawaii Department of Labor and Industrial Relations. Johnson was denied benefits by the DLIR Claims Examiner, but appealed that denial to the Appeals Referee. On November 26, 1984, Referee Joyce Pang issued a decision reversing the denial of benefits finding that United had failed to prove that Plaintiff was the skycap who solicited the tips from the group of passengers, and therefore that Plaintiff was not

"discharged for misconduct in connection with work" within the meaning of H.R.S. § 383–30(4). Neither party contends that the issue of whether Plaintiff was unlawfully discriminated against based on his race, age, or national origin was litigated at the unemployment appeals hearing. Plaintiff himself did not attend the second session of the hearing. Defendants did not appeal the Referee's decision to the Circuit Court, and therefore it is an unreviewed administrative decision.

Although Plaintiff alleged in paragraph 20 of the Complaint that, "On information and belief Plaintiff was discharged because he was soon to have vested pension rights." Plaintiff testified at his deposition that he became aware after his discharge that he was fully vested in his pension. Defendant Wilcox in his affidavit stated that he was unaware of what effect if any Plaintiff's discharge would have upon his pension, and Plaintiff has not refuted that statement.

This Court has already found that Plaintiff's charge of discrimination signed on February 28, 1984 was received by the EEOC on March 5, 1984, 181 days after his discharge was communicated to him on September 5, 1984. However, this Court has found that the 180–day period was equitably tolled for at least one day and therefore Plaintiff's charge of discrimination was timely filed.

On November 18, 1985, Plaintiff received his copy of the notice of right to sue letter issued by the EEOC on September 27, 1985. Plaintiff's attorney testified at her deposition that she could not recall when she received her copy of the notice of right to sue letter but did confirm that she received a separate copy from that received by her client. This action was instituted on the first business day following 90 days after November 18, 1985, the day on which Plaintiff received his notice of right to sue letter.

## II. PLAINTIFF'S CLAIMS UNDER TITLE VII

■ Plaintiff's claims under Counts I and II of the First Amended Complaint allege a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e based on Plaintiff's race and national origin. It is clear from the allegations of Plaintiff's complaint and the memoranda filed herein that Plaintiff is claiming disparate treatment, as opposed to disparate impact, and therefore must show that Defendants intentionally discriminated against him. *Foster v. Arcata Associates, Inc.,* 772 F.2d 1453 (9th Cir.1985), *cert. denied* 475 U.S. 1048, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986). The burden of proof in this type of discrimination case was articulated by the Supreme Court in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If Plaintiff succeeds in establishing a prima facie case of discrimination, the burden then shifts to Defendants to articulate a legitimate non-discriminatory reason for his discharge. If Defendants meet their burden of production, then Plaintiff must show that the articulated reason was a mere pretext for discrimination. Plaintiff cannot meet this burden by mere conjecture and speculation, he must adduce specific evidence that the reason for his discharge was a pretext. *Foster,* 772 F.2d at 1459; *Schuler v. Chronicle Broadcasting Company,* 793 F.2d 1010, 1011 (9th Cir.1986).

Initially, Defendants argue that Plaintiff has not established a prima facie case of discrimination. Although Defendants admit that Plaintiff is within a protected class because he was black, at his deposition Plaintiff testified that he did not know whether he had been replaced. Moreover, in a discharge case the plaintiff must show that they were performing in accordance with their employer's reasonable expectations, although the Supreme Court has stated that the requirements of establishing a prima facie case are not rigidly fixed. *McDonnell–Douglas Corp. v. Green,* 411 U.S. 792, 802 n. 13, 93 S.Ct. 1817, 1824 n. 13, 36 L.Ed.2d 668 (1973); *Foster v. Arcata Associates, Inc.,* 772 F.2d at 1459–1460.

■ Assuming *arguendo* that Plaintiff has established a prima facie case of discrimination, the burden now shifts to De-

fendants to articulate a legitimate non-discriminatory reason for his discharge. *Texas Department of Community Affairs v. Burdine*, 450 U.S. at 252–253, 101 S.Ct. at 1093; *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir.1983) (ADEA); *Foster v. Arcata Associates, Inc., supra.* Defendants have met this burden.

Plaintiff conceded in his deposition that the reason provided to him for his discharge was the solicitation of tips from Mrs. Jikaku and her traveling companions. The affidavit of Defendant Wilcox establishes that after investigating the allegations, calling Mrs. Jikaku at her home, and reviewing Johnson's personnel file including the final notice he received in July 1984, the decision was made to discharge Johnson. It is undisputed between the parties that the solicitation of tips is a legitimate and substantial basis for discharge as set forth in "You and United." Plaintiff does not claim that the solicitation of tips was condoned.

The burden now shifts back to Plaintiff "to negate the Defendants' excuse by showing that the proferred reason is but a mere pretext for discrimination." *Foster v. Arcata Associates, Inc.*, 772 F.2d at 1459. This is both a burden of production and a burden of persuasion.

■ In his Memorandum in Opposition to Defendants' Motion for Summary Judgment, Plaintiff relies upon two types of evidence to show that the reason for his discharge was a mere pretext. First, Plaintiff claims that the State of Hawaii Department of Labor and Industrial Relations Appeals Referee's unemployment decision shows that he was "wrongfully terminated based upon an insubstantial and inadequate identification procedure." (Plaintiff's Opposition Memo at 5.) This Court must reject Plaintiff's reliance upon the Referee's decision for a number of reasons. First, the Supreme Court has held that an unreviewed state administrative decision is not entitled to preclusive effect in a subsequent discrimination action. *University of Tennessee v. Elliott*, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986); *Kremer v. Chemical Construction Corp.*, 456 U.S.

461, 470 n. 7, 102 S.Ct. 1883, 1891 n. 7, 72 L.Ed.2d 262 (1982). The Ninth Circuit has followed *Elliott* and held that a California administrative unemployment decision which was not reviewed by that state's courts was not entitled to preclusive effect in a subsequent ADEA action. *Mack v. South Bay Beer Distributors*, 798 F.2d 1279 (9th Cir.1986).

■ Second, a thorough review of the Referee's decision reveals that whether Plaintiff's termination was based on unlawful reasons, *e.g.* race, age, or national origin, was not litigated before the Referee. Third, the Referee's decision notes that the solicitation of tips is a legitimate grounds for discharge and that United was justified in conducting its investigation but that the evidence before the Referee was simply insufficient to prove that Plaintiff was the skycap involved.

Fourth, it is well established that the function of this Court is not to re-examine every personnel decision made by an employer. *Cf. Steckl v. Motorola, Inc.*, 703 F.2d 392, 393–394 (9th Cir.1983) (ADEA not intended as vehicle for review of business decisions). It is undisputed that United did receive a complaint that a black skycap had solicited tips from a group of passengers. United's internal investigation convinced it and Defendant Wilcox that Johnson was the skycap involved. Whether or not Mrs. Jikaku was correct in her identification of Johnson does not show that Defendants were motivated by discriminatory intent. *See: Douglas v. Anderson*, 656 F.2d 528, 533 n. 5 (9th Cir.1981); *Snyder v. Washington Hospital Center*, 36 FEP Cases 445, 447–448 (D.D.C.1984) [Available on WESTLAW, 1984 WL 3244] (Truth of complaints about employee's performance is not real issue but instead whether employer received complaints).

Plaintiff also offers a number of unauthenticated letters of recommendation written by either former co-employees or supervisors. None of these are from co-employees or supervisors based in Honolulu. Moreover, as argued by Defendants, all of these are hearsay and can be properly disregarded by this Court. *United States v.*

*Dibble,* 429 F.2d 598 (9th 1970); *Zoslaw v. MCA Distributing Corp.,* 693 F.2d 870, 883 (9th Cir.1982). However, even if the Court were to consider these letters of recommendation, they fail to create any issue of material fact. None of the recommendations address the Jikaku incident and are merely generalized statements of Johnson's performance at prior locations.

■ Additionally, Plaintiff submitted his affidavit in which he claims "United Airlines and Jack Wilcox have both discriminated against me based upon my race and my age." (Affidavit of Earl Johnson, ¶ 10.) Defendants have objected and moved to strike that paragraph, as well as paragraphs 5, 8, 11 and 12 on the grounds that they are conclusory, state legal conclusions, and are therefore objectionable under Fed.R.Civ.Pro. 56(e) and Local Rule 220-7. This Court agrees that Plaintiff's affidavit contains numerous conclusions and other statements which are not based on personal knowledge and therefore the offending portions must be struck. *DePinto v. Provident Security Life Insurance Company,* 374 F.2d 50, 55 (9th Cir.1967); 10A, C. Wright, A. Miller, and M. Kane, *Federal Practice and Procedure,* Civil 2nd, Section 2738, p. 486–494 (2d Ed.1983). Moreover, Plaintiff's subjective judgments of discrimination do not create a genuine issue of fact. *Schuler v. Chronicle Broadcasting Co.,* 793 F.2d 1010 (9th Cir.1986).

In sum, Plaintiff has failed to offer any probative evidence that Defendants' stated reason for his discharge is a pretext. *Foster,* 772 F.2d at 1463; *Douglas v. Anderson,* 656 F.2d 528, 535 (9th Cir.1981). Summary judgment is appropriate where Defendants show that Plaintiff lacks an essential element of his case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265, 273–274 (1986). Plaintiff lacks any evidence that his discharge for the solicitation of tips was a pretext for discrimination based on his race, color, or national origin. Therefore, summary judgment is GRANTED in favor of Defendants on Counts I and II of the First Amended Complaint.

## III. PLAINTIFF'S CLAIM UNDER 42 U.S.C. § 1981

Plaintiff's claim in Count III of the First Amended Complaint alleges a violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981. Like his claim of discrimination under Title VII, Plaintiff must prove intentional discrimination. *Gay v. Waiters and Dairy Lunchmen's Union,* 694 F.2d 531, 537 (9th Cir.1982); *General Building Contractors Association v. Pennsylvania,* 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982).

■ 42 U.S.C. § 1981 may be used to remedy claims of racial discrimination but not discrimination based on age, *Kodish v. United Airlines, Inc.,* 628 F.2d 1301, 1303 (10th Cir.1980), or claims based on national origin. *Anooya v. Hilton Hotels Corp.,* 733 F.2d 48 (7th Cir.1984).

The analytical framework established in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) has been applied by the Ninth Circuit to cases arising under 42 U.S.C. § 1981. *Gay v. Waiters and Dairy Lunchmen's Union, supra,* 694 F.2d at 537–538; *Lowe v. City of Monrovia,* 775 F.2d 998 (9th Cir.1985).

Thus, the discussion with respect to Plaintiff's claims in Counts I and II of the First Amended Complaint is equally applicable to Plaintiff's claim under 42 U.S.C. § 1981. Plaintiff has failed to show that he has any evidence whatsoever that Defendants intended to discriminate against him based on his race. There is no dispute that the passenger identified a black skycap. Therefore, Defendants are entitled to summary judgment in their favor on Count III of the First Amended Complaint.

## IV. PLAINTIFF'S CLAIM UNDER THE ADEA

Count V of the First Amended Complaint states a claim under the Age Discrimination In Employment Act, 29 U.S.C. § 621 *et seq.* The *Burdine* analysis is also applied to cases arising under the ADEA. *Steckl v. Motorola, Inc.,* 703 F.2d 392 (9th Cir. 1983); *Sakellar v. Lockheed Missiles and*

*Space Company,* 765 F.2d 1453, 1455 (9th Cir.1985). Plaintiff has the burden of showing that age was a "determining factor" in Defendants' decision to discharge him. *Douglas v. Anderson,* 656 F.2d 528, 531 (9th Cir.1981).

In paragraph 20 of the First Amended Complaint, Plaintiff alleged that he was discharged to prevent him from vesting in Defendants' pension plan. However, at his deposition, Plaintiff testified that he was fully vested in United's pension plan at the time of his termination and thus negated that allegation of the complaint. Likewise, Plaintiff has offered no competent evidence to support the allegation in paragraph 21 of the First Amended Complaint that Defendant United has a pattern and practice "of laying off or discharging employees shortly before their pension vested and replacing them with younger employees."

▪ Like Plaintiff's claims in Counts I and II of the First Amended Complaint, Plaintiff has offered no probative evidence that the reason articulated by Defendants for his discharge was a pretext. Plaintiff has not offered to this court any evidence whatsoever that age was a "determining factor" or indeed any factor in Defendants' decision to discharge him. Plaintiff points to no statement made by either Defendant Wilcox or any other official of Defendant United regarding his age. The Unemployment Referee's decision is silent on this issue.

In his deposition Plaintiff claimed that it was "convenient" for Defendants to discharge him in September 1984. However, Plaintiff's objective perception that he was discriminated against on the basis of his age is simply insufficient to create an issue of material fact or to show that Defendants intentionally discriminated against him. *Schuler v. Chronicle Broadcasting Company,* 793 F.2d 1010, 1011 (9th Cir.1986); *Steckl v. Motorola, Inc.,* 703 F.2d 392, 393–394 (9th Cir.1983); *Elliott v. Group Medical and Surgical Service,* 714 F.2d 556, 656 (5th Cir.1983).

Defendants had no control over when Mrs. Jikaku would register her complaint. Plaintiff has "produced no facts which, if believed, would have shown pretext and thus tendered an issue for trial." *Steckl v. Motorola, Inc.,* 703 F.2d at 393. Therefore Defendants are entitled to summary judgment on Count V of the First Amended Complaint.

## V. PLAINTIFF'S ERISA CLAIM

In Count VI of the First Amended Complaint, Plaintiff asserts a claim under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* Plaintiff has not specified any particular section of ERISA which he claims was violated and the Court must assume in the absence of any contrary direction from Plaintiff that he is alleging a breach of Section 510 of ERISA, 29 U.S.C. § 1140 which makes it unlawful for an employer to "discharge . . . a participant or beneficiary for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan."

Courts have interpreted 29 U.S.C. § 1140 to require a showing of specific intent to interfere with the participant's rights under a plan. *Baker v. Kaiser Aluminum & Chemical Corp.,* 608 F.Supp. 1315, 1318 (N.D.Cal.1984), citing *Watkinson v. Great Atlantic & Pacific Tea Company, Inc.,* 585 F.Supp. 879, 883 (E.D.Pa.1984) and *Titsch v. Reliance Group, Inc.,* 548 F.Supp. 983, 985 (S.D.N.Y.1982).

Plaintiff admitted during his deposition that he was fully vested in United's pension plan at the time of his termination. Thus, to the extent that he alleges a violation of Section 510 of ERISA based on his alleged failure to vest in United's pension plan because of his discharge, Defendants are entitled to summary judgment on Count VI of the First Amended Complaint. *Logan v. St. Luke's–Roosevelt Hospital Center,* 636 F.Supp. 226, 236 (S.D.N.Y.1986) (Since Plaintiff conceded she was fully vested at time of termination and could elect early retirement, Defendant Hospital entitled to summary judgment).

▪ Plaintiff in his affidavit claims that because of his discharge he will receive a smaller pension than if he were to continue

working until retirement. However, the fact that an employee's discharge results in their receiving a smaller pension is merely an incidental result and does not show evidence of intent. *Baker v. Kaiser Aluminum and Chemical Corp.*, 608 F.Supp. at 1319 (Granting summary judgment for employer where employee showed only that discharge resulted in smaller pension). *See also Titsch v. Reliance Group, Inc., supra, affirmed without opinion,* 742 F.2d 1441 (2nd Cir.1983) (Fact that one consequence of discharge is reduced benefits insufficient to state claim under 29 U.S.C. § 1140).

Defendant Wilcox stated in his affidavit that he had no knowledge of what effect if any Plaintiff's termination would have on his retirement benefits. Plaintiff has failed to offer any evidence that Defendants acted with a specific intent to deprive him of additional pension benefits. Plaintiff was fully vested in Defendants' pension plan at the time of his termination. Therefore, Defendants are entitled to summary judgment in their favor on Count VI of the First Amended Complaint.

## VI. PLAINTIFF'S CLAIM IN COUNT IX AND EQUITY

Count IX of the First Amended Complaint alleges a violation of the "rights both civil and otherwise of the Plaintiff." To the extent that Plaintiff is alleging a claim under either the Civil Rights Act of 1866 or the Civil Rights Act of 1871, they have already been disposed of by this opinion, and this Court's prior ruling on Defendants' Motion to Dismiss. Since the only other civil rights left to Plaintiff would be those arising under state law, the Court finds that it lacks subject matter jurisdiction over Count IX of the First Amended Complaint and hereby orders that it be DISMISSED WITHOUT PREJUDICE to Plaintiff's right to bring an action under state law.

Finally, Plaintiff has included in paragraph 41 of the First Amended Complaint a paragraph captioned "Equity" which is not separately labeled as an additional count. The Court finds that it also lacks subject matter jurisdiction over paragraph 41 of the First Amended Complaint and therefore DISMISSES IT WITHOUT PREJUDICE to Plaintiff's right to bring an action under state law.

WHEREFORE, it is hereby ORDERED, ADJUDGED, AND DECREED that Defendants are GRANTED SUMMARY JUDGMENT in their favor on Counts I, II, III, V and VI of the First Amended Complaint. Count IX and paragraph 41 are DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.

## ORDER DENYING MOTION TO RECONSIDER SUMMARY JUDGMENT

The court, having reviewed the motion, the memoranda in support thereof and in opposition thereto, being fully apprised as to the contents therein, and finding oral argument unnecessary, finds as follows:

On April 2, 1987, the court granted Defendants' Motion for Summary Judgment. The plaintiff now moves to reconsider based upon the possible existence of facts which may be beneficial to his case. A review of the procedural history of this case is essential to an understanding of this motion.

On February 18, 1986, the plaintiff filed his complaint. The complaint was amended by stipulation on June 13, 1986. The defendants filed an answer on April 22, 1986 which was amended by leave of court on January 6, 1987.

On November 26, 1986, the defendants filed a motion to dismiss. The motion was eventually set for January 26, 1987. Despite repeated phone calls to Ms. Pendragon's office by this court, and repeated promises by Ms. Pendragon to deliver the necessary memorandum, the opposition memorandum was not filed until until January 23, 1987, one working day before the hearing. The late filing was in clear violation of L.R. 220-3 requiring all opposition briefs to be filed eighteen (18) days before the hearing. The court need not consider memoranda which are not in conformance with the Local Rules. L.R. 220-11.

Nevertheless, the court considered Ms. Pendragon's memorandum. Based primarily upon research and issues not contained within the plaintiff's brief, the court denied a portion of the defendants' request.

A similar incident occurred before Magistrate Tokairin, forcing the Magistrate to reschedule the motion from December 24, 1986 to January 5, 1987 in order to allow Ms. Pendragon more time to file an opposition memorandum.

On January 20, 1987, Ms. Pendragon filed her first requests for discovery.

On January 6, 1987, the defendants filed a motion for summary judgment. The hearing was set for February 23, 1987. The defendants agreed to continue the motion, reserving their right to challenge the opposition memorandum under L.R. 220–3. The court permitted the continuance to March 9, 1987. The plaintiff filed the opposition memorandum on March 2, 1987, six days before the hearing and again in violation of L.R. 220–3. Once again, the court considered the opposition memorandum. On April 2, 1987, the court filed its order granting summary judgment in favor of the defendants.

On April 13, 1987, the plaintiff filed his Motion to Reconsider Summary Judgment. In the motion, the plaintiff raises a new issue which had not been raised in his opposition memorandum. The plaintiff argues that additional information exists within the exclusive control of the defendants which would provide a genuine issue of material fact.

First, the plaintiff waited almost one year before making a discovery request. The first discovery request was not made until after the motion for summary judgment was filed. Plaintiff presents no explanation for this delay.

Second, the plaintiff does not show that such information actually exists. He only argues that such information might exist because of inadequate discovery. The plaintiff does not, and the court believes he probably could not, show the probable existence of any evidence that the defendants' legitimate reasons for termination were pretextual.

■ Third, without prejudging the issue, the discovery requests appear to be overbroad. The plaintiff essentially asked for the personnel files of every employee who has ever been disciplined in the entire history of United Airlines, Inc. No restrictions were placed on the discovery request. Thus, the defendants' refusal to turn over all such information was justified and in good faith.

Fourth, and most importantly, the plaintiff failed to raise this issue in a timely fashion. Ms. Pendragon was aware that certain discovery requests were outstanding. If additional time was necessary to obtain additional information, Ms. Pendragon could have moved for a Fed.R.Civ.P. 56(f) continuance. She did not. As she has done so many times in the past, she has ignored the time deadlines, hoping the court would inconvenience itself and forgive her transgressions.

■ After the hearing, the court took the motion for summary judgment under advisement for nearly a month. Only after careful analysis of all the affidavits, deposition transcripts, letters and other factual showings in the record did the court finally issue its decision. Ms. Pendragon did not see fit to file a memorandum on the issue of insufficient facts until after she received the court's decision adverse to her client. Now, Ms. Pendragon seeks to resurrect her case because she wishes to assert another issue. Piecemeal litigation of this type cannot be condoned. Colorable issues may always be found which were not asserted previously. Cases could never be finally adjudicated if the court permitted counsel to continually raise new issues after judgment is rendered. Ms. Pendragon may not now assert this issue having failed to raise it previously.

THI's failure to move for a continuance under Rule 56(f) prevents it from complaining of the timing of summary judgment in this case. In the absence of an application for continuance, the district court had before it all of the evidence which it could reasonably conclude would be submitted. There was absolutely no

reason to delay entry of judgment. The court did not err in granting the defendants' motion prior to any discovery.

*THI–Hawaii, Inc. v. First Commercial Financial Corp.*, 627 F.2d 991, 994 (9th Cir. 1980).

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion to Reconsider Summary Judgment be, and the same is, DENIED.